BRIGGS & STRATTON CORPORATION, Plaintiff,

v.

CLINTON MACHINE CO., Inc., Defendant.

Civ. No. 711.

United States District Court
N. D. Iowa, E. D.

Dec. 31, 1956.

362

Ira Milton Jones, James R. Custin, Milwaukee, Wis., E. Marshall Thomas, Dubuque, Iowa, for plaintiff.

Edwin J. Balluff, Arthur Raisch, Detroit, Mich., H. F. Reynolds, Dubuque, Iowa, Wayne G. Cook, Davenport, Iowa, for defendant.

GRAVEN, District Judge.

Following the original trial in this case the Court on March 12, 1956, made and entered its Findings of Fact, Conclusions of Law, and Order for Judgment. On March 12, 1956, in accord with the said Findings, Conclusions, and Order the Court entered judgment herein. In said judgment the Court adjudged, decreed, declared, and ordered as follows:

"1. IT IS HEREBY ADJUDGED, DECREED, AND DECLARED that Claim 5 of United States Patent No. 2,605,753 issued August 5th, 1952, to Dorothy H. Madle, Administratrix of the Estate of Alain M. Madle, is invalid.

"2. IT IS HEREBY ADJUDGED, DECREED, AND DECLARED that Claims 1, 2, 4, and 5, the latter two as corrected, of United States Patent No. 2,693,791 issued November 9th, 1954, to Leo J. Lechtenberg are invalid.

"3. IT IS HEREBY ADJUDGED, DECREED, AND DECLARED that Claims 1, 2, 4, 5, 6, 7, 8, 14, 15, and 16 of United States Patent No. 2,693,789 issued November 9th, 1954, to Leo J. Lechtenberg are valid.

"4. IT IS HEREBY ADJUDGED, DECREED, AND DECLARED that such claims are infringed by the defendant's accused V. S. 100 engine.

"5. IT IS HEREBY ADJUDGED, DECREED, AND DECLARED that the plaintiff have judgment against the defendant for damages and profits for such infringement, such damages and profits to be later determined; and that the Court retains jurisdiction for the making of such determination.

"6. IT IS HEREBY ADJUDGED AND DECREED that the defendant be and it is hereby enjoined and restrained from infringing those claims.

"7. IT IS HEREBY ADJUDGED that no award of attorney fees be made to either party.

"8. IT IS HEREBY ADJUDGED that each party shall pay one-half of the taxable costs taxed in the total sum of $————————.

"9. IT IS HEREBY ORDERED that proceedings under this judgment be stayed until April 16th, 1956."

On March 21, 1956, the defendant filed a motion for a clarifying opinion and a motion for an additional findings of fact, for a new trial, for extending effective date of judgment, and to amend judgment. On March 22, 1956, the Court entered an Order extending the effective date of the judgment until June 16, 1956. On April 2, 1956, the defendant filed a motion to relieve the defendant from the judgment and Order of March 12, 1956, and for a new trial with respect to the matter of the validity and infringement of Lechtenberg United States Letters Patent No. 2,693,789 to permit the defendant to present newly discovered evidence. On April 4, 1956, a hearing was held on the post-judgment motions of the defendant. On April 9, 1956, following that hearing on said motions the Court entered a ruling the material portions of which are as follows:

"* * * The Court, having considered said motions, is of the view that in litigation involving patents it is desirable the parties be given opportunity to present all of the evidence which they deem material or pertinent where the final decision will not be unduly delayed.

"Under Rule 59 of the Federal Rules of Civil Procedure in an action tried without a jury the Court may open up a judgment which has been entered for the purpose of taking additional evidence. The Court is of the view that both of the parties should be given an opportunity to present additional evidence as to any or all of the issues as to all of the patents involved.

"IT IS HEREBY ORDERED that the judgment heretofore entered on March 12th, 1956, be and the same is set aside in its entirety.

"IT IS FURTHER ORDERED that both of the parties be and they are hereby given leave to present additional evidence as to any or all of the issues as to all of the patents involved in this litigation, including the issue as to infringement.

"IT IS FURTHER ORDERED that the Court will hear such additional evidence at the Federal Court House at Dubuque, Iowa, starting on June 4th, 1956, at 10:00 o'clock A. M.

"IT IS FURTHER ORDERED that save so far as the post-judgment motions of the defendant are not granted or rendered moot by this Order they are overruled and denied."

On June 4, 1956, the Court entered the following Order:

"Pursuant to motion of the plaintiff this day made in open court at the Federal Court House at Dubuque, Iowa;

"IT IS HEREBY ORDERED that the claims of the plaintiff based upon Lechtenberg Patent No. 2,693,791, referred to as the second Lechtenberg Patent, be and they are hereby dismissed."

On June 4th, 5th, and 6th, 1956, the parties presented their additional evidence. The additional evidence presented related to the validity of Claim 5 of Madle patent No. 2,605,753, the claimed infringement of that claim by the defendant, the validity of Claims 1, 2, 4, 5, 6, 7, 8, 14, 15, and 16 of Lechtenberg patent No. 2,693,789, and the claimed infringement of those claims by the defendant. Following the submission of the additional evidence, written briefs and arguments were filed. On October 1, 1956, oral arguments were made following which the case was submitted to the Court and by it taken under advisement. In the proceedings subsequent to March 12, 1956, Ira Milton Jones, James R. Custin, and E. Marshall Thomas appeared as attorneys for the plaintiff. Edwin J. Balluff, Arthur Raisch, Hal F. Reynolds, Wayne G. Cook, and Charles McKinley appeared as attorneys for the defendant. Now, to-wit, on this 31st day of December, 1956, the Court now being fully advised in the

premises makes and enters the following Findings of Fact, Conclusions of Law, and Order for Judgment.

## Findings of Fact

1. The plaintiff, Briggs & Stratton Corporation, is a corporation organized and existing under the laws of the state of Delaware with its main office and manufacturing plant at Milwaukee, Wisconsin. The defendant, Clinton Machine Co., is a corporation organized and existing under the laws of the state of Michigan. Its main office is at Clinton, Michigan. It has manufacturing plants at Clinton, Michigan, and Maquoketa, Jackson County, Iowa. Jackson County, Iowa, is in the Eastern Division of the Northern District of Iowa. The plaintiff charges the defendant with patent infringement committed in this District. Jurisdiction is based upon Section 1338, Title 28, United States Code. Venue is based upon Section 1400(b), Title 28, United States Code.

2. The plaintiff and the defendant are among the leading manufacturers of light internal combustion gasoline engines and they are in keen competition in that field. The greater number of the engines manufactured by them are sold to manufacturers, assemblers, and distributors of rotary lawn mowers. They are placed on and attached to such mowers for the purpose of furnishing the motive power for them. The plaintiff concentrates upon the manufacture of a single cylinder four cycle internal combustion engine. The abbreviation V. S., as used in connection with the engines hereafter referred to, stands for Vertical Shaft.

3. The plaintiff charges the defendant with infringement of United States patent No. 2,605,753 issued August 5, 1952, to Dorothy H. Madle, Administratrix of the Estate of Alain M. Madle of which patent the plaintiff is the assignee and owner. That patent is hereafter referred to as the Madle patent. The plaintiff further charges the defendant with infringement of United States patent No. 2,693,789 issued November 9, 1954, to L. J. Lechtenberg of which the plaintiff is also the assignee and owner.

4. At a pretrial conference held prior to the original trial, counsel for the plaintiff stated that in connection with the Madle patent the plaintiff relied upon Claims 2, 5, 6, and 10. At the beginning of the original trial the plaintiff dismissed with prejudice as to Claims 2, 6, and 10 of that patent. As to the Madle patent the plaintiff relies upon Claim 5 thereof. That patent and claim will be first considered.

5. In gasoline internal combustion engines the mixture in the combustion chamber is ignited by means of an ignition system. Breaker points are a component part of that system. One of the breaker points is fixed and the other is movable. A spark is made at the time the points separate. It is necessary that the sparks be timed in accord with the speed and working of the engine.

6. Claim 5 of the Madle patent is given in the form set forth by the plaintiff. In the patent that claim appears without the breaks and numbers hereafter appearing:

### Claim 5

In an ignition system for a single cylinder four cycle internal combustion engine of the type having a crankshaft driven magneto for effecting spark plug operation:

1. fixed and

2. movable breaker points

3. accessibly mounted on the exterior of the engine remote from the magneto;

4. a cam follower movably supported by the engine

5. remote from the breaker points;

6. a motion transmitting connection between the cam follower and the movable breaker point

   such that separation of the points is effected by motion of the cam follower in one direction;

7. a rotatable part adjacent to said cam follower;

8. a driving connection between said rotatable part and the engine crankshaft

whereby the speed of rotation of the crankshaft determines the speed of rotation of said rotatable part;

9. a member carried by said rotatable part for rotation therewith and for motion relative thereto in response to centrifugal force; and

10. a cam surface on said member engaged by said cam follower

for imparting motion to the cam follower in said direction once each revolution of the rotatable part to effect breaker point separation at instants depending upon the speed of crankshaft rotation and the position of said member relative to the rotatable part as determined by the centrifugal force acting on said member.

7. In the Madle patent reference is made to the following patents:

| Number | Name | Date |
| --- | --- | --- |
| 1,224,247 | Wacker | May 1, 1917 |
| 1,291,216 | Smith | Jan. 14, 1919 |
| 1,463,958 | Kettering | Aug. 7, 1923 |
| 1,636,017 | Smith | July 19, 1927 |
| 1,736,441 | Hendrickson | Nov. 19, 1929 |
| 1,904,308 | Harmon | Apr. 18, 1933 |
| 2,013,541 | Littlefield | Sept. 3, 1935 |
| 2,215,106 | Lefebvre | Sept. 17, 1940 |

8. The defendant gave notice of many prior art patents in connection with the Madle patent. It introduced into the evidence a substantial number, but not all, of the patents of which it gave notice. The following were the patents introduced into evidence by the defendant in connection with the Madle patent:

| Number | Name | Date |
| --- | --- | --- |
| 740,781 | Sturtevant | October 6, 1903 |
| 780,221 | Packard | January 17, 1905 |
| 798,992 | Cochran | September 9, 1905 |
| 810,963 | Motsinger | January 30, 1906 |
| 816,083 | Farwell | March 27, 1907 |
| 857,715 | Brillie | June 25, 1907 |
| 863,151 | Churchill | August 13, 1907 |
| 906,290 | Riker | December 8, 1908 |
| 1,239,689 | Heaslet | September 11, 1917 |
| 1,265,454 | Kettering et al. | May 7, 1918 |
| 1,281,204 | Pitts | October 8, 1918 |
| 1,291,216 | Smith | January 14, 1919 |
| 1,401,058 | Erickson | December 20, 1921 |
| 1,427,718 | Brown | August 29, 1922 |
| 1,430,524 | Kettering | September 26, 1922 |
| 1,463,958 | Kettering | August 7, 1923 |
| 1,465,644 | Kettering | August 21, 1923 |
| 1,636,017 | Smith | July 19, 1927 |
| 1,792,089 | Hardman | February 10, 1931 |
| 1,983,072 | Davis, Jr. | December 4, 1934 |
| 2,013,541 | Littlefield | September 3, 1935 |
| 2,215,106 | Lefebvre | September 17, 1940 |
| 2,388,994 | Phelon | November 13, 1945 |

Foreign Patent

| 310,082 | British | April 22, 1929 |
| --- | --- | --- |

No additional patents relating to the Madle patent were introduced into evidence at the hearing at which the parties presented additional evidence. That hearing will be referred to as the supplemental hearing. Both parties presented considerable additional evidence at that hearing relating to the matter of

the invalidity of Claim 5 of the Madle patent and the claimed infringement of that claim by the defendant. The Court has reconsidered the matter of the validity of Claim 5 of the Madle patent in the light of all the evidence. The Court has also considered the question of infringement in the light of all the evidence.

9. In the plaintiff's brief, original hearing (pp. 6–8), the plaintiff states as hereafter set forth in regard to the invention defined by Claim 5:

"The Madle patent relates to a magneto ignition system for a single-cylinder four stroke cycle internal combustion engine, and, so far as is material to this case, it refers more particularly to means for actuating the movable breaker point in such a magneto ignition system.

"Without going into technical detail, the breaker points in an internal combustion engine comprise a pair of electrical contacts which separate or 'open' to cause a spark to jump across the spark plug electrodes. Since sparking of the plug follows instantaneously upon opening of the breaker points, breaker point opening must be timed quite accurately in relation to the rotational position of the crankshaft in order to insure that ignition of the fuel-air mixture charge in the cylinder will occur at the proper instant in the cycle of engine operation. (R 183–184) When the engine is being started, the spark should occur relatively late in the cycle, near the instant when the piston reaches top dead center at the end of its compression stroke, but as the engine increases speed the spark should occur a substantial time before this top dead center position.

"Mechanisms were known, even before the Madle invention, for automatically advancing the spark with increasing engine speed, and this was usually accomplished by means of a centrifugally responsive mechanism which took advantage of the fact that the centrifugal force on a rotating part increases with increasing rotational speed. Prior to the Madle invention, however, all such automatic spark advance mechanisms had one or more of the following important disadvantages:

"(1) An external lubrication system, separate and additional to that inside the engine crankcase, was required for the breaker point actuating cam and other rotating or rubbing parts in the breaker actuating mechanism. One conventional expedient for effecting lubrication was a wiper or wick at the exterior of the engine which required service from time to time. (R 578–579)

"(2) The breaker points in single-cylinder engines were usually mounted behind the engine flywheel, that is, between the flywheel and its adjacent crankcase wall. Located in this position, the points could not be readily serviced or replaced. Access to the points usually necessitated removal of the blower housing and then detachment of the flywheel from the crankshaft by means of a pulling tool.

"(3) The breaker point actuating cam was usually mounted on the engine crankshaft and therefore rotated at crankshaft speed, causing the breakers to produce an unnecessary spark during each cycle of engine operation.

"Madle's invention was the conception of a simple structure which not only avoided every one of these disadvantages of past mechanisms but in addition was efficient, compact and trouble-free. (R 187–188)

"By mounting the breaker actuating cam on the camshaft, instead of on the crankshaft, Madle was able to make the breaker points open only once during each engine cycle, eliminating the unnecessary spark which occurred with a crankshaft mounted cam and which shortened the life of spark plugs and

breaker points. By mounting the flyweight, which actuates the cam for angular movement, on the camshaft, Madle not only achieved simplicity and compactness, utilizing the camshaft for a dual function, but, more important, he disposed the rotating and rubbing parts inside the engine crankcase where they operated in a constant spray or mist of engine lubricating oil thus obviating the need for any external lubrication system such as the wiper or wick which had theretofore been considered necessary. And by employing a simple motion transmitting connection between the movable breaker point and the cam follower inside the crankcase, Madle was able to mount the breaker points in a readily accessible location on the exterior of the engine, where they would not be likely to have oil deposited upon them."

In the plaintiff's rebuttal brief, original hearing (p. 6), the plaintiff makes the further statement:

"Defendant has ignored two key phrases in claim 5 which point directly to the invention covered thereby. The breaker points are defined as mounted on the exterior of the engine 'remote from' the magneto; and the cam follower is defined as 'remote from' the breaker points. For a correct understanding of the claim, these expressions cannot be disregarded."

10. The question for determination is as to what patentable invention is shown by Claim 5 and the engine manufactured in accord therewith. Fixed and movable breaker points were not new. The advancing and retarding of a spark in proportion to the speed of the engine was not new. A camshaft driven at one-half of the crankshaft speed was not new. The placing of the breaker points outside of the crankcase and remote therefrom was not new. If Claim 5 is construed to be limited to a cam and cam follower within the crank case for actuating the timing mechanism so that the cam and cam follower would be lubricated (which is doubtful), such construction was disclosed in the prior art. A "cam follower movably supported by the engine remote from the breaker points" was not new. A "motion transmitting connection between the cam follower and the movable breaker point such that separation of the points is effected by motion of the cam follower in one direction" was not new. A "rotatable part adjacent to said cam follower" was not new. A "driving connection between said rotatable part and the engine crankshaft whereby the speed of rotation of the crankshaft determines the speed of rotation of said rotatable part" was not new. A "member carried by said rotatable part for rotation therewith and for motion relative thereto in response to centrifugal force" was not new. A "cam surface on said member engaged by said cam follower" was not new. In Claim 7 of the Madle patent, a claim not relied on by the plaintiff in this case, after referring to the cam, it is stated: " * * * said cam overlying the opposite face of the member so that the member is interposed between said cam and the arm to guide the arm in its swinging motion; * * *." No similar statement occurs in Claim 5. In none of the prior art patents is the cam mounted on one side of the gear and the swingable centrifugally actuated arm on the other side of the gear. However, if Claim 5 be construed to include that feature, such location would be a matter of engineering choice rather than of patentable invention. It is not clear that the plaintiff claims that the location of the parts referred to constituted patentable invention.

11. The elements set forth in Claim 5 and contained in the plaintiff's engine manufactured in accord with that claim were old and well known. However, the fact that all of such elements are old does not prevent them, when considered as a whole, from constituting patentable invention. After considering Claim 5 from that view-

point, the Court is of the view and finds that Claim 5 is an aggregation of old elements which, in the aggregation, perform and produce no new or different function or operation than that theretofore performed or produced by them.

12. In the case of the Madle patent the accused engine is the defendant's Model 2500 engine. The defendant's claim as to its non-infringement of the Madle patent is in substance premised upon the premise that Claim 5 of the Madle patent does not define inventive combination but merely covers an aggregation of old elements. If Claim 5 of the Madle patent does define inventive combination, then the defendant's Model 2500 engine infringes that claim.

13. As heretofore noted, it is the claim of the plaintiff that the defendant's V. S. 100 engine infringes Claims 1, 2, 4, 5, 6, 7, 8, 14, 15, and 16 of the first Lechtenberg patent No. 2,693,789. That patent cites the following reference to patents:

| Number | Name | Date |
|---|---|---|
| 1,447,245 | Gore | Mar. 6, 1923 |
| 1,463,958 | Kettering | Aug. 7, 1923 |
| 2,157,666 | Jacobi | May 9, 1939 |
| 2,249,319 | Lohner | July 15, 1941 |
| 2,256,002 | Molnar | Sept. 16, 1941 |
| 2,305,186 | Muenk | Dec. 15, 1942 |
| 2,375,718 | Winkels et al. | May 8, 1945 |
| 2,404,833 | Forster | July 30, 1946 |
| 2,424,416 | Piry | July 22, 1947 |
| 2,511,823 | Klotsch | June 13, 1950 |
| 2,559,079 | Leja | July 3, 1951 |
| 2,569,461 | Dingman | Oct. 2, 1951 |
| 2,583,466 | Brownlee | Jan. 22, 1952 |
| 2,590,134 | Slonneger | Mar. 25, 1952 |
| 2,606,541 | Lutz | Aug. 12, 1952 |
| 2,630,881 | Bosma | Mar. 10, 1953 |
| 2,669,322 | Brown | Feb. 16, 1954 |

### Foreign Patents

| Number | Country | Date |
|---|---|---|
| 32,802 | Netherlands | May 15, 1934 |

The defendant gave notice as to a number of claimed prior art patents in connection with the first Lechtenberg patent. At the original trial it introduced the following into evidence:

| Number | Name | Date |
|---|---|---|
| *1,242,985 | Sawtelle | Oct. 16, 1917 |
| 2,157,666 | Jacobi | May 9, 1939 |
| *2,357,942 | Farr | Sept. 12, 1944 |
| 2,404,833 | Forster | July 30, 1946 |
| 2,559,079 | Leja | July 3, 1951 |
| *2,627,940 | Bakke | Feb. 10, 1953 |
| 2,606,541 | Lutz | Aug. 12, 1952 |
| *2,346,148 | Bosma | April 11, 1944 |
| 2,630,881 | Bosma | March 10, 1953 |
| *1,276,891 | Felix | Aug. 27, 1918 |

Those marked with an asterisk were not included in the patents to which reference was made in the patent. Those not so marked were referred to in the patent.

At the supplemental hearing the defendant relied upon the following prior art patents as anticipations and to show the state of the art in relation to Lechtenberg patent No. 2,693,789:

| Number | Name | Date |
|---|---|---|
| 615,766 | Vansickle | Dec. 13, 1898 |
| 2,218,332 | Fowler | Oct. 15, 1940 |
| 2,227,247 | Conover | Dec. 31, 1940 |
| 2,346,148 | Bosma | April 11, 1944 |
| 2,097,662 | Hennecke | Nov. 2, 1937 |
| 2,417,195 | Hargreaves | March 11, 1947 |
| 2,627,940 | Baake | Feb. 10, 1953 |

The Bosma and Baake patents were in evidence at the original hearing but were not discussed. The defendant prior to the original trial specially pleaded the Vansickle patent but did not put it in evidence at that trial. The Conover, Fowler, Hennecke, and Hargreaves patents were put into evidence at the supplemental hearing. At the supplemental hearing the defendant also relied on prior use and it presented considerable evidence as to claimed prior use. In that connection the defendant relied upon an engine referred to as the "Lauson" engine which was manufactured and sold by the Lauson Company of New Holstein, Wisconsin, from 1941 to 1947. In that connection it also relied upon the

prior use of its single-cylinder four stroke cycle air cooled Model 700 engine. The defendant stresses that none of the prior art patents last above referred to or prior public uses were cited by the Patent Office against the application of the Lechtenberg patent in question. Claims 1, 2, 4, 5, 6, 7, 8, 14, 15, and 16 of the first Lechtenberg patent are as follows:

"1. A single cylinder internal combustion engine having a crankcase with two spaced apart side walls, each of which carries a crankshaft bearing, a cylinder and a crankshaft journaled in the bearings with its ends projecting from the crankcase, one end of the crankshaft having a flywheel mounted thereon and the other end being the power take-off end of the shaft, characterized by the fact that: the cylinder and all portions of the crankcase including the wall thereof remote from and facing the cylinder, except that wall of the crankcase which carries the bearing for the power take-off end of the crankshaft is a single casting; and further by the fact that said wall of the crankcase which carries the bearing for the power take-off end of the crankshaft is provided by a cover removably secured to said casting so that said cover is interchangeable with others of different design to adapt the engine to any of a variety of different installations without necessitating alteration of the cylinder-crankcase casting.

"2. A single cylinder four-stroke cycle internal combustion engine having a crankshaft, a cam shaft parallel to the crankshaft, a cylinder and a crankcase, through opposite walls of which the ends of the crankshaft pass, one end of the crankshaft having a flywheel thereon and the other end being the power take-off end of the crankshaft, characterized by the fact that: the cylinder and all portions of the crankcase including the wall thereof remote from

and facing the cylinder, except that wall of the crankcase through which the power take-off end of the crankshaft passes, is one casting; by the fact that said wall through which the power take-off end of the crankshaft passes is provided by a cover removably secured to said casting; by the fact that the crankshaft and the cam shaft are supported by said cover and the wall of the casting opposite the cover; and by the fact that the supports for the cam shaft comprise wells in the cover and said opposite wall of the casting.

"4. The engine defined in claim 2 further characterized by the fact that said cover has a relatively deep depression in its inner face so that when the engine is positioned to operate with its cylinder horizontal and said cover at the bottom of the engine, the depression in its inner face provides an oil sump; and characterized further by the fact that the cover has a boss projecting from its inner face and bored through to provide a bearing for the adjacent end of the crankshaft, said boss extending for substantially the full depth of the depression in the cover so that oil in the depression rising to a level substantially equal to the full depth of the depression, when the engine is used with its cylinder horizontal, will not drain out along the crankshaft when the engine is idle.

"5. A single cylinder, four-stroke cycle internal combustion engine adapted for operation with its cylinder horizontal, said engine having in addition to its cylinder a crankshaft, a cam shaft parallel to the crankshaft, and a crankcase with spaced apart top and bottom walls through which the upper and lower ends of the crankshaft pass, said engine being characterized by the fact that: the cylinder and all portions of the crankcase except its bottom wall through which the lower

end of the crankshaft passes is one casting; by the fact that said bottom wall comprises a cover having a relatively deep depression removably secured to the casting with the edge of the depression joining the casting on a plane parallel to said top and bottom walls and below the cylinder, by the fact that the cam shaft is supported by the cover and the top wall of the crankcase and the bearings for the crankshaft are in said cover and the top wall of the crankcase; further by the fact that the depression in the cover provides an oil sump and has an oil filler port therein communicating with the depression below the top edge thereof with the mouth of the filler port on a level no higher than the edge of the depression so that the level of the oil in the sump will not be above the edge of the depression; and said cover being further characterized by a pair of bosses projecting up from the bottom of its depression, one of said bosses being bored through and providing the bearing for the lower end of the crankshaft, and the other boss having a well, closed at its bottom extending down into it and providing a support for the lower end of the cam shaft, the boss providing the lower crankshaft bearing extending substantially to the level of the edge of the depresison (sic) in the cover so that when the engine is idle the oil in the sump will not be drained therefrom through said crankshaft bearing.

"6. A single cylinder, four-stroke cycle internal combustion engine adapted for operation with its cylinder horizontal, said engine having in addition to its cylinder a crankshaft, a cam shaft parallel to the crankshaft, and a crankcase with spaced apart top and bottom walls through which the upper and lower ends of the crankshaft pass, said engine being characterized by the fact that: the cylinder and all portions of the crankcase except its bottom wall through which the lower end of the crankshaft passes is one casting; by the fact that said bottom wall comprises a cover removably secured to the casting and having a relatively deep depression; by the fact that the cam shaft is supported by the cover and the top wall of the crank case and the bearings for the crankshaft are in said cover and the top wall of the crankcase; further by the fact that the depression in the cover provides an oil sump and said cover being further characterized by mounting means formed integrally therewith for mounting the engine with its cylinder horizontal.

"7. The engine defined in claim 6 but wherein said mounting means for the engine comprises a substantially circular flange on the cover having a flat downwardly facing rim concentric to the crankshaft axis and adapted to seat upon a flat surface.

"8. The engine defined in claim 6 but wherein said mounting means for the engine extends from the region of the oil sump towards the cylinder head to thereby enable the mounting means to provide a large mounting area without greatly increasing the outline of the engine.

"14. In an engine of the character described: a cylinder and a crankcase formed as one casting, the crankcase being open at its bottom; a cover closing the open bottom of the crankcase, said cover having a depression therein providing an oil sump for the engine; bearings for the crankshaft of the engine carried by the cover and the wall of the crankcase opposite the cover; said cover having an oil filler port provided by a well extending down from the top of the cover alongside the depression in the cover, the top of said well providing the mouth of the port and lying substantially on a plane with the top

edge of the depression; and the cover having an oil drain port in its bottom provided by a bore parallel to the oil filler port but lying between said port and the adjacent wall of the depression and breaking through both the wall of the depression and the oil filler port to thereby communicate the oil filler port with the interior of the depression; and removable caps for closing both the oil filler port and said oil drain port.

"15. In an engine of the character described, the structure set forth in claim 14 further characterized by the provision of a boss projecting from the bottom of the depression in the cover, said boss being bored through and providing the bearing for the lower end of the crankshaft and having a height to reach substantially to the level of the mouth of the filler port so that oil in the sump cannot drain out through the lower crankshaft bearing when the engine is idle.

"16. A single cylinder four-stroke cycle internal combustion engine having a crankshaft, a cylinder and a crankcase through opposite walls of which the ends of the crankshaft pass, one end of the crankshaft having a flywheel thereon and the other end being the power take-off end of the crankshaft, characterized by the fact that: the engine is designed to be used with its cylinder horizontal with the walls of the crankcase through which the crankshaft passes being the top and bottom walls of the crankcase and with the flywheel adjacent to the top wall and the power take-off end of the crankshaft projecting down from the bottom wall; by the fact that the cylinder and all portions of the crankcase including the wall thereof remote from and facing the cylinder, except the bottom wall through which the power take-off end of the crankshaft passes is one integral casting; by the fact that

said bottom wall is provided by a cover removably secured to said casting; by the fact that the crank shaft and the cam shaft are supported by said cover and the top wall of the crankcase; by the fact that said cover has a relatively deep upwardly opening depression which provides an oil sump; and characterized further by the fact that the cover has a boss projecting upwardly from its inner face and bored through to provide a bearing in which the lower end of the crank-shaft is rotatably supported, said boss extending for substantially the full depth of the depression in the cover so that oil in the depression rising to a level equal to the full depth of the depression will not drain out along the crankshaft when the engine is idle."

14. The plaintiff, following extensive experiments in January, 1953, placed on sale a die cast aluminum one cylinder four cycle air cooled gasoline engine. Soon thereafter the defendant brought out its V. S. 100 engine which is the accused engine. The structure of the plaintiff's engine is in accord with the disclosure contained in Lechtenberg patent No. 2,693,789. The plaintiff's engine met and is meeting with marked commercial success. In the plaintiff's engine the crankcase and cylinder is cast as one integral unit. That unit is the main and most expensive part of the engine. Engines of the type here involved have a cover casting which is removable. In the plaintiff's engine the removable cover is at the bottom of the engine with the crankshaft protruding through it. Engines of the type here involved are designed to be installed on other pieces of equipment to furnish the motive power for them. It is indicated that there are 36 possible uses to which engines of the type here involved may be put. Engines of the type here involved are installed on various decks or platforms of various types and kinds of equipment. The plaintiff's bottom cover casting is interchangeable with shapes

of covers of different designs so as to adapt the engine to a variety of installations without any alteration in the cylinder crankcase casting. By using aluminum the plaintiff substantially reduced the weight of the engine. By die casting the plaintiff reduced the cost of the engine. By means of the bottom cover the plaintiff greatly increased the adaptability of the engine. It is clear that the plaintiff's engine is light, compact, reasonably priced, highly adaptable, and outstanding in its field. The question for determination is whether the structure disclosed by Lechtenberg patent No. 2,693,789 discloses patentable invention, or merely a high degree of artisanship.

15. The casting of the cylinder and crankcase as an integral unit was not new. The die casting of engine parts was not new. The use of aluminum was not new. Having one wall of the engine removable was not new. Having the bottom cover of the engine removable was not new.

■ 16. In its original Findings, the Court made the following finding:

"The patent discloses a separation of the bottom cover casting and the cylinder crankcase casting in such a way and manner that all of the constants are in the main and the more expensive casting and all of the variables are in the inexpensive bottom cover casting. That feature was not disclosed in the prior art and was new. The Court finds that such disclosure constituted patentable invention. Such disclosure appears more specifically and definitely in some of the claims than it does in others, but it more or less inheres in all of the claims."

In the light of the additional prior art patents introduced into evidence at the supplemental hearing and further development of the prior art patents introduced into evidence at the original trial and the evidence as to prior use introduced at the supplemental hearing, the Court is of the view that its finding as

to patentable invention was erroneous. The word "variables" as used in that finding by the Court signified those features of bottom cover castings by means of which the engine could be adapted to various and different uses. Therefore, that finding was premised upon the adaptability of the engine disclosed by Lechtenberg patent No. 2,693,789 to various and different uses by means of interchangeable cover plates. It now appears that the adaptability of engines to various and different uses by means of interchangeable bottom parts was not new. Such adaptability was disclosed in the Vansickle, Conover, and Bosma patents. It now appears beyond a reasonable doubt that the use of such interchangeable parts to adapt an engine to various and different uses was not new. It now appears beyond a reasonable doubt that prior to Lechtenberg patent No. 2,693,789 there was wide prior use of interchangeable parts to adapt an engine to various and different uses.

17. The Court now finds that none of the disclosures in Lechtenberg patent No. 2,693,789 constitute patentable invention in view of the prior art and prior use. The Court finds that Claims 1, 2, 4, 5, 6, 7, 8, 14, 15, and 16 of Lechtenberg patent No. 2,693,789 constitute an aggregation of old elements which, in the aggregation, perform and produce no new or different function or operation than that heretofore performed or produced by them.

18. The engine produced by the plaintiff in accord with the disclosures of the Lechtenberg patent represents a high degree of artisanship and an excellent piece of engineering. However, the disclosures do not amount to patentable invention.

19. At the original hearing the defendant did not claim or argue that its V. S. 100 engine did not infringe the Lechtenberg patent if that patent was valid. The attack of the defendant at the original hearing was confined to the matter of the validity of that patent. At the supplemental hearing the defendant claimed that even if the Lechtenberg

patent was valid its V. S. 100 engine did not infringe and offered evidence in support of that claim.

20. The defendant's accused engine has a cylinder liner which does not appear in the disclosures of the Lechtenberg patent or in the engine manufactured by the plaintiff in accord therewith. Save in the matter of the cylinder liner, the defendant's accused engine is a striking and almost slavish copy of the plaintiff's engine. If the claims of Lechtenberg patent No. 2,693,789 do define inventive combination, the defendant's accused engine clearly infringes.

21. The Court finds that the circumstances are such that no award of attorney fees should be made to the defendant.

22. The Court finds that the circumstances are such that each party should be assessed one-half of the taxable costs.

### Conclusions of Law

1. This Court has jurisdiction of the parties to this action and of the subject matter of this action.

2. Claim 5 of Madle patent No. 2,605,753 is invalid as lacking in invention over the prior art.

3. Claims 1, 2, 4, 5, 6, 7, 8, 14, 15, and 16 of Lechtenberg patent No. 2,693,789 are invalid as lacking in invention over the prior art.

4. No attorney fees should be awarded to the defendant.

5. Each party should pay one-half of the taxable costs of this action.

### Order for Judgment

IT IS HEREBY ORDERED that judgment shall be entered adjudging, decreeing, and declaring:

1. that Claim 5 of Madle patent No. 2,605,753 is invalid;

2. that Claims 1, 2, 4, 5, 6, 7, 8, 14, 15, and 16 of Lechtenberg patent No. 2,693,789 are invalid.

3. that no award of attorney fees should be made to the defendant;

4. that each party pay one-half of the taxable costs.