**CLINTON ENGINES CORPORATION, a Michigan Corporation, Plaintiff,**

v.

**BRIGGS & STRATTON CORPORATION, a Delaware Corporation, Defendant.**

Civ. No. 14007.

United States District Court
E. D. Michigan, S. D.
March 31, 1959.

Armstrong, Essery, Helm & Marshall, Rottman & Siegel and Albert Sugar, Detroit, Mich., Harry F. Hittle, Lansing, Mich., and Chris M. Youngjohn, Detroit, Mich., for plaintiff.

Ira Milton Jones, Milwaukee, Wis., Dickinson, Wright, Davis, McKean & Cudlip, Detroit, Mich., Olwell & Brady, Milwaukee, Wis., and James E. Haggerty, Detroit, Mich., for defendant.

O'SULLIVAN, District Judge.

The matter for decision is defendant's Motion for Summary Judgment as to those matters set forth in paragraphs 15, 18(a), 19 and 21 of plaintiff's Complaint. Defendant contends that all matters contained in said paragraphs were tried, determined and fully adjudicated in a previous suit between these parties wherein the defendant here, Briggs & Stratton Corporation, was plaintiff, and Clinton Machine Company, plaintiff herein, was defendant. Defendant's mo-

tion further asserts that there remains now no issue for this Court to try as to the matters set forth and relied upon in the mentioned paragraphs of plaintiff's Complaint. Defendant partially relies upon the doctrine of collateral estoppel. Clinton Machine Company will hereafter be referred to as Clinton and Briggs & Stratton Corporation as Briggs & Stratton.

Clinton, in this action, seeks damages from Briggs & Stratton for alleged violations of the Sherman and Clayton Act, 15 U.S.C.A. §§ 1 et seq., 12 et seq. In its Complaint, filed in December, 1954, it charges that Briggs & Stratton, as a part of its scheme to create a monopoly and restrain trade, in bad faith and with evil design, sought and obtained from the United States Patent Office certain patents, referred to as the Lechtenberg patents, with full knowledge that the inventions thereby sought to be patented were not, in fact, patentable. Plaintiff further charges that in seeking said patents, defendant deliberately and fraudulently withheld from the Patent Office its knowledge of prior art and previous public use of the so-called inventions which, if disclosed to the Patent Office, would have prevented issuance of the patents in question; that, after obtaining the patents in question, the defendant, Briggs & Stratton, in bad faith, on December 9, 1954, commenced an action in the United States District Court in Iowa against Clinton alleging infringement by Clinton of the patents fraudulently and illegally obtained. These charges are set forth in paragraphs 15, 18(a), 19 and 21 of the complaint as follows:

"15. In the spring of the year 1953, plaintiff publicly announced to the industry that it intended to design additional models to its line of engines, and that it would shortly be in a position to offer an engine in competition for each of the models produced by defendant. Upon learning of such plans, defendant, well knowing that it would thus be unable to pursue its practice of price reduction on competing models while retaining higher prices on non-competing models, and in order to impede, stifle and hamper interstate commerce, reduce competition and regain complete domination in the industry, deliberately and maliciously conceived a scheme to undermine the plaintiff by obtaining certain letters patent which it well knew would be wholly invalid, but which it well knew would nevertheless be useful to embarrass plaintiff in its relationships with customers and others. Accordingly, on May 11, 1953, and again on May 11, 1954, defendant assembled numerous and divers specious claims which comprised numerous and divers mechanical practices and forms previously employed chiefly by plaintiff as well as other engine manufacturers, and caused to be filed two separate applications for letters patent in the U. S. Patent Office in Washington, D. C., well knowing that any patent or patents that would or could issue pursuant to claims made thereunder would be wholly and completely invalid and were intended solely to be used to injure and destroy plaintiff and remove it from the industry.

"18(a). Exerted unseemly and undue pressure upon certain examiners of the U. S. Patent Office, as a result of which U. S. Patents numbers 2693789 and 2693791, now owned by defendant, were issued on November 9, 1954, greatly in advance of the time that action thereon would normally have been taken. These patents relate to certain features embodied in plaintiff's so-called light weight aluminum engine, which was the most popular and best seller in plaintiff's line.

"19. Defendant well knew that the aforesaid patents were not based on novelty or invention, but embodied features previously used by plaintiff, and were thus wholly and completely invalid. Nevertheless, on the 16th day of November, 1954, it notified plaintiff that it was in-

fringing said patents and demanded that plaintiff desist from further manufacture of engines with features embodied therein. On November 24, 1954, solely in pursuance of its scheme unlawfully to destroy plaintiff, restrain interstate trade and commerce, and stifle competition, defendant wrote a letter to each of plaintiff's original equipment customers notifying them of the issuance of said patents and stated that two manufacturers who had copied certain features covered by said patents had been notified of infringement. A copy of said letter of November 24, 1954, is hereto attached as Exhibit "A" and incorporated herein by express reference. Defendant well knew that because of plaintiff's large volume of sales of said type of engine, its customers, as maliciously calculated by defendant, would readily infer that plaintiff was intended as one of such manufacturers.

"21. In further pursuance of its malicious and illegal scheme to force plaintiff out of business and stifle competition, defendant, on the 9th day of December, 1954, instituted an action against plaintiff in the Northern District of Iowa, Eastern Division, for alleged infringement of the aforesaid patents, well knowing that the same were wholly and completely invalid, but intending thereby further to influence and induce plaintiff's customers to cease purchasing its engines, and as part of its plan and scheme to undermine plaintiff, defendant circulated divers rumors and false information in the small engine industry and particularly among plaintiff's customers relative to the institution of said suit and its probable outcome and result. In addition, defendant well knew that the expense of defending said suit in the courts would so weaken plaintiff financially that it might not wish to undertake such defense."

Defendant's answer denies the wrongdoing so charged against it. After this cause was at issue, trial thereof was postponed to await the conclusion of the Iowa litigation.

In the Iowa case, Clinton filed an answer and counterclaim denying the validity of the so-called Lechtenberg patents, its claimed infringement thereof, and set forth as its 13th, 15th and 16th defenses, the following:

"13th Defense. That the subject matter of the U. S. Letters Patent No. 2693789 and Patent No. 2693791, set out in the Complaint and covered by the claims thereof, was in public use and on sale for more than one year prior to the filing of said applications, and that the patentee of said Letters Patents and his attorneys and agents, and the assignee of said Letters Patents, knew of such subject matter being in public use and on sale in the United States for over a year, but concealed such fact from the officials of the United States Patent Office, and as a consequence thereof, said Letters Patents were fraudulently and deceitfully obtained.

"15th Defense. That the application for Letters Patent No. 2605753, which was filed by Dorothy H. Madle, as Administratrix of the Estate of Alain Madle, deceased, as a continuation of an application previously filed by Alain Madle, and abandoned, discloses and covers subject matter which was not the invention of the said Alain Madle, and which was not embraced by or disclosed in or covered by the patent applications previously filed by said Alain Madle, and that at the time of the filing of the application on which Patent No. 2605753 issued to this Plaintiff, its agents and attorneys knew that such application contained other subject matter than the invention of the said Alain Madle, and particularly as disclosed and set forth in the applications previously filed by the said Alain Madle, and

that with fraudulent intent and purpose concealed such fact from Dorothy H. Madle, Administratrix, and while so concealing such fact had the said Dorothy H. Madle sign the application and swear to the statutory oath forming a part of the application and thus perpetrating upon the officials of the United States Patent Office fraud and deceit and thereupon had said Letters Patent No. 2605753, surreptitiously issued; and that in view of such fraudulent conduct, said Letters Patent No. 2605753, and each and all of the claims thereof, is invalid, null and void.

"16th Defense. That the specifications and claims of each of said patents set out in said complaint are calculated to deceive and mislead the public because of ambiguity and needless multiplication of nebulous claims, and said patents are, therefore, null and void."

In its counterclaim for Declaratory Judgment in the Iowa action, Clinton incorporated by reference the allegations of its answer. It asked for a declaratory judgment that the Lechtenberg patents were invalid, that it was not infringing, that the plaintiff's complaint be dismissed, and "that this defendant be allowed costs and attorney fees, and that this defendant have such further, other, different and general relief as it may be entitled to."

In the Iowa litigation, Briggs & Stratton sought to establish the validity of three patents, a so-called Madle patent, No. 2605753, and the so-called Lechtenberg patents, Nos. 2693789 and 2693791, respectively. The cause in Iowa was tried before Honorable Henry N. Graven, United States District Judge. At the conclusion of the proofs originally offered in the case, Judge Graven filed Findings of Fact and Conclusions of Law and entered a Judgment. In his original disposition of the case Judge Graven found that the Madle patent and Lechtenberg patent 2693791 were invalid, but that if such patents were valid,

Clinton was guilty of infringement thereof; he held that Lechtenberg patent 2693789 was valid, that Clinton had infringed it, and directed that Briggs & Stratton should receive damages, later to be determined by the Court. The said first Findings of Judge Graven contained the following:

"17. The defendant claims that in the prosecution of the application for the patent pertinent prior art was concealed from the Patent Office. The Court finds that no pertinent prior art was concealed from the Patent Office in connection with the patent.

"18. The defendant's engine VS100 is a striking copy and imitation of the structure disclosed by the patent. It is clear and the Court so finds, that the defendant's engine VS100 reads on and infringes the claims in question as to the patentable invention found to have been disclosed by them.

"29. The Court finds that the circumstances are such that no award of attorney fees shall be made to either the plaintiff or the defendant.

"30. The Court finds that the circumstances are such that each party should be assessed one-half of the taxable costs."

Judgment on Judge Graven's Findings was entered on March 12, 1956. Following entry of this judgment, new counsel appeared for Clinton, and on April 2, 1956, it filed a pleading designated "Motion to Relieve Defendant from Judgment and Order of March 12, 1956, and Motion for New Trial with Respect to the Matter of the Validity and Infringement of the Lechtenberg U. S. Patent No. 2693789." Various affidavits were filed in support of these motions; the affidavits related principally to claimed prior art and previous public use of the subject matter of the Lechtenberg patent which had been held valid and infringed.

In oral argument on the last mentioned motions, the following colloquy between

the Court and the then counsel for Clinton Machine Company occurred:

"By Mr. Raisch: Now, I think the defendant has been diligent in locating this Lauson prior arts, for reasons I will point out very shortly. And I think there is an excusable mistake or inadvertence with respect to some of the issues raised with respect to the issue of protecting the invention and the interchangeability of the covers. But if Your Honor finds that the defendant has not been diligent, then defendant offers to pay the expenses—reasonable expenses incurred by the plaintiff due to defendant's so-called lack of diligence, namely, the expenses incurred by the new trial, bearing on the newly found evidence.

"I want to point out to Your Honor one thing that is very significant. Plaintiff is a very old company in this field, it is located just sixty or seventy miles from New Holstein, which is a very short distance northeast of Fond du Lac, Wisconsin. Defendant is a relatively new newcomer in this field, located here in Iowa and away out in Michigan.

"As Your Honor is well aware, in the prosecution or acting upon applications in the Patent Office, they are filed chronologically in the patent office in the order in which they are received. The first application filed is acted upon first. During the course of prosecution of the Lechtenberg application, the plaintiff filed a petition to make the Lechtenberg application special, that is, urged the office to grant immediate action. Now, as a prerequisite to having a case made special the petitioner, which was Lechtenberg in this case, filed affidavit of certain prior arts and apprised the patent office of the best prior art that is available. Now, I have known the attorneys for Briggs & Stratton Company a good many years, I am

very fond of them, and I don't want any inferences drawn whatsoever that they intentionally or even knowingly withheld any information from the patent office, I don't think they did.

"The Court: That charge is made in the pleadings, isn't it?

"Mr. Raisch: If it is Your Honor—

"Mr. Custin: Yes, it is.

"Mr. Raisch: If that charge is made, I don't stand upon it, neither would Mr. Balluff, and I am sure we would agree we would withdraw it. I have known Mr. Jones and right here I want to say that is not correct or encouraged. Ira happens to be a friend of mine. Here is a very fine old line company, they didn't know about this patent. If they didn't know it, then how could this little newcomer in the field have known of it when this transpired from 1941 to 1947. It was only through an accident that this prior arts was discovered within the last week or ten days, subsequent to this decision of March 12th."

Judge Graven granted the motion for supplemental hearing, and on April 9, 1956, entered an order containing, among other things, the following:

"It is hereby ordered that the judgment heretofore entered on March 12, 1956, be, and the same is, set aside in its entirety."

Evidence was taken upon a supplemental hearing. At its beginning, and on motion of Briggs & Stratton, it was ordered that the claim based upon Lechtenberg Patent No. 2693791 be dismissed. On December 31, 1956, Judge Graven filed Findings of Fact, Conclusions of Law, and Order for Judgment (reported as Briggs & Stratton Corp. v. Clinton Machine Co., Inc., D.C., 147 F.Supp. 361). In this Finding and Judgment, Judge Graven declared the Lechtenberg patent No. 2693789 invalid, so that all of the patents relied upon by Briggs & Stratton became adjudged in-

valid. It is not necessary to here repeat all of the matters reviewed and discussed in this reported opinion. However, the following have special pertinence in considering the disposition of the instant Motion for Summary Judgment.

Findings of Fact:

"14. The plaintiff, Briggs & Stratton, following extensive experiments in January, 1953, placed on sale a die cast aluminum one cylinder four cycle air cooled gasoline engine. Soon thereafter the defendant brought out its VS100 engine, which is the accused engine. The structure of the plaintiff's engine is in accord with the disclosure contained in the first Lechtenberg patent. (No. 2693789) The plaintiff's engine met, and is meeting, with marked commercial success. * * * The question for determination is whether the structure disclosed by the first Lechtenberg patent discloses patentable invention, or merely a high degree of artisanship.

"16. * * * In the light of the additional prior art patents introduced into evidence at the supplemental hearing and further development of the prior art patents introduced into evidence at the original trial and the evidence as to prior use introduced at the supplemental hearing, the Court is of the view that the finding as to patentable invention was erroneous.

"18. The engine produced by the plaintiff in accord with the disclosures of the Lechtenberg patent represents a high degree of artisanship and an excellent piece of engineering. However, the disclosures do not amount to patentable invention.

"20. Save in the matter of the cylinder liner, the defendant's accused engine is a striking and almost slavish copy of the plaintiff's engine. If the claims of Lechtenberg patent No. 2693789 do define inventive combination, the defendant's accused engine clearly infringes.

"12. If Claim 5 of the Madle patent does define inventive combination, then the defendant's Model 2500 engine infringes that claim.

"21. The Court finds that the circumstances are such that no award of attorney fees should be made to the defendant.

"22. The Court finds that the circumstances are such that each party should be assessed one-half of the taxable costs."

Judge Graven's Conclusions of Law follow the Findings of Fact and his Order for Judgment contained the following:

"1. That claim 5 of the Madle patent No. 2605753 is invalid;

"2. That claims 1, 2, 4, 5, 6, 7, 8, 14, 15 and 16 of Lechtenberg patent No. 2693789 are invalid;

"3. That no award of attorney fees should be made to the defendant;

"4. That each party pay one-half of the taxable costs."

Judgment was accordingly entered on December 31, 1956. Briggs & Stratton appealed. Clinton gave notice of cross-appeal and therein gave notice that it, "appeals * * * from that portion of the decision entered December 31, 1956, in effect holding U. S. Patents 2693789 and 2605753 infringed by defendant, and from the failure of said judgment to grant defendant all of the relief asked in its counter-claim * * *." The Court of Appeals affirmed Judge Graven's judgment of invalidity of Briggs & Stratton's patents. It accordingly held that the question of infringement had become moot and dismissed Clinton's cross-appeal. This decision is reported as Briggs & Stratton Corp. v. Clinton Machine Co., 8 Cir., 247 F.2d 397.

Although Clinton's notice of cross appeal indicated its appeal from Judge Graven's failure to award it all of the relief asked in its counter claim (such

relief including a request for allowance of attorney fees) its briefs on appeal did not argue nor state as one of the questions involved the propriety of Judge Graven's holding that under the circumstances of the case no award of attorney fees could be made to the defendant. This question was not discussed or passed upon by the Court of Appeals. In its brief, filed at the conclusion of the first hearing before Judge Graven, Clinton made the following arguments concerning its claim that Briggs & Stratton had, in processing the Lechtenberg patents, knowingly failed to make full disclosures of prior art and public use, which Clinton claimed was within the knowledge of Briggs & Stratton. The following are excerpts from Clinton's brief in this regard.

"In the prosecution of the patent application which resulted in Lechtenberg Patent 789, no structure embodying the features of the 'structure previously manufactured by Briggs & Stratton Corporation, the plaintiff, and by Clinton Machine Co., the defendant, was ever called to the attention of the examiner of the Patent Office. The examiner of the Patent Office, it is true, made a search of the prior art but this search of necessity was limited to the records of the Patent Office. No prior patents showing the structure of the previous Briggs & Stratton machine and the previous Clinton machine was found by the examiner in the search of the prior patents nor was it called to the attention of the examiner.

"In the prosecution of the application resulting in the Lechtenberg Patent 789, the attorney prosecuting the application personally interviewed the examiner. It is significant that this attorney in interviewing the examiner did not disclose these previous prior art machines previously manufactured by Briggs & Stratton and Clinton Machine Co., and by no means called them to the attention of the examiner. The examiner, therefore, was left in the dark entirely concerning the prior art structure of which Lechtenberg's attorney had knowledge while the application was being prosecuted. Lechtenberg's attorney knew, of course, that had he called to the attention of the examiner these prior art machines, the examiner would have undoubtedly ruled that there was no invention in the claimed structure of the Lechtenberg Patent 789; that there was no invention in making one of the walls of the crankcase removable instead of making the other wall removable; that there would be no invention in casting one of the walls integral instead of another wall and making the bottom wall removable instead of the side wall.

"These machines previously manufactured by Briggs & Stratton, plaintiff, and Clinton Machine Co., defendant, long prior to the filing of the Lechtenberg application, were well known to the plaintiff as indicated by the testimony of the plaintiff's Vice-President in charge of engineering, Mr. Brown. It is also shown that these machines were manufactured and sold by the defendant Clinton Machine Co. long prior to the filing of the Lechtenberg application, which resulted in Patent 789, and more than a year prior to the filing of said application, as shown by the testimony of witness Damon (T.R.355).

"Moreover, Lechtenberg's attorney knew all of this. He knew what he was doing. He also knew that the Patent Office did not know of these prior structures because they were never cited as prior art in the applications. They were never cited because these patent elements of structure were never considered by either Clinton Machine Co., or Briggs & Stratton Corporation to be of patentable nature and were never patented.

"In spite of all of this Lechtenberg's attorney did not inform the Patent Office of the prior art even though he had a personal interview with the examiner handling the application."

Notwithstanding that its counsel, upon the argument in support of Clinton's motion for new trial had completely exonerated the attorneys for Briggs & Stratton of any fraud or concealment in processing the Lechtenberg patents, the Clinton brief on appeal in the Iowa litigation referred to Briggs & Stratton's petition to make special the processing of its patent application as follows:

"It would appear that the petition had the effect of 'pressuring' the Patent Office into allowing the claims without carefully considering them or the prior art cited in the Petition."

The decision of the Court of Appeals did not discuss bad faith or inequitable conduct upon the part of Briggs & Stratton. In his concurring opinion, Judge Sanborn was complimentary to the work of Briggs & Stratton in producing the engine which was the subject of the Lechtenberg patent question, but concurred in holding that it did not quite reach the status of invention within the meaning of the patent laws. He said:

"As a practical matter, Lechtenberg's contribution to the art of producing a light, cheap, efficient, air-cooled engine, suitable for furnishing power to rotary lawn mowers and like devices, and susceptible of being die cast, was a meritorious one and was both new and useful. It met with commercial success and was, of course, soon copied by competitors. It is not strange that the District Court first concluded that the Lechtenberg patent was valid and infringed. * * * However, as we have pointed out in a number of cases since the Supreme Court decided Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, the amount of originality and ingenuity, over and beyond novelty and utility, which will constitute invention necessary to sustain a patent for a combination of old elements in a crowded art, has increased. The conclusion of the District Court is not out of line with our recent decisions in such cases." [247 F.2d 400.]

With this review of the Iowa litigation, it becomes necessary now to consider Briggs & Stratton's present reliance thereon as a basis for its present motion for summary judgment. This Court believes the following to be a fair statement of the reasoning of the Briggs & Stratton motion:

*First:* The findings and judgment of Judge Graven that under the circumstances of the Iowa case no attorney fees should be awarded to Clinton was a determination and adjudication that there was no fraud, concealment or inequitable conduct on the part of Briggs & Stratton in obtaining the Lechtenberg patents or in maintaining its infringement suit to protect them.

*Second:* That all matters relating to fraud, concealment and inequitable conduct on the part of Briggs & Stratton were litigated and tried in the Iowa case, and that a review of the evidence and issues of that litigation demonstrates beyond argument that there was no such fraud, concealment or inequitable conduct; therefore, there are no issues in that regard that can be tried out here. This Court has, from the briefs filed by Briggs & Stratton, concluded that it is here contending that from a review of the pleadings, evidence and findings of the Iowa litigation (the entire record thereof being received in evidence for the purpose of this motion) this Court must hold that reasonable minds could come to no other conclusion than that Brigg's & Stratton were not guilty of the misconduct charged in paragraphs 15, 18(a), 19 and 21 of the Clinton complaint in this action. Judgment for defendant as to those paragraphs is accordingly asked. This Court assumes that the de-

fendant is relying upon subsection (c) of Rule 56, 28 U.S.C., which states that:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law."

*Third:* That the actions of Briggs & Stratton in obtaining the patents and in instituting litigation to protect them cannot be the basis for a suit under the Sherman and Clayton Act. They argue that a patentee by obtaining a patent becomes the possessor of a monopoly to the extent of the patent, and, therefore, such patentee cannot be guilty of a violation of the anti-trust laws by seeking to protect a monopoly that such a patent affords to such patentee. Their briefs, however, concede that the application of this doctrine does not apply if it can be shown that the applicant for the patent knew that what he sought to have patented was not patentable; that such patentee was guilty of concealment and fraud in seeking the patent and in instituting litigation to protect it, and that such actions were part of an illegal and evil scheme to create an illegal monopoly and illegally restrain trade.

The Court will discuss these contentions in the above order.

■ *First, collateral estoppel:* The cases which have brought into being the doctrine of collateral estoppel clearly announced its underlying principles. The problem comes in their application to the instant case. Restatement of Judgments, Section 68, page 293, defines the rule as follows:

"(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as (exceptions not here applicable)

"(2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action."

The United States Supreme Court has stated the principle in the case of Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 74 S.Ct. 414, 415, 98 L.Ed. 532, as follows:

"We have often held that under the doctrine of res judicata a judgment entered in an action conclusively settles that action as to all matters that were or might have been litigated or adjudged therein. But a prior judgment between the parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' This latter aspect of res judicata is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation."

Judge Cooley of the Michigan Supreme Court in the case of Jacobson v. Miller, 41 Mich. 90, 93, 1 N.W. 1013, 1014, described the doctrine as follows:

"The general principles which must govern the case are familiar. There are two matters in respect to which an adjudication once made may be conclusive: First, the subject-matter involved in the litigation; second, the point of fact or of law, or of both, which was necessarily adjudicated in determining the issue upon the subject-matter in litigation."

Another tersely descriptive statement of the principle is found in the language of Judge Hamley of the 9th Circuit in the case of E. V. Prentice Machine Co. v. Associated Plywood Mills, 252 F.2d 473, 476:

"It is predicated on the idea that once a party has fought out a matter in litigation with the opposing party, he cannot later renew the duel."

The limitations of the doctrine were stated in an early and leading authority on the point as follows:

" * * * the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." Cromwell v. Sac County, 94 U.S. 351, 353, 24 L.Ed. 195.

In their brief filed in support of the instant motion, counsel for Briggs & Stratton break this principle down into the components which they recognize must combine in order that a previous judgment collaterally estop an issue from being retried in later litigation. They assert:

"A matter is subject to collateral estoppel if (1) the parties are the same, (2) the matter is put into issue by the pleadings. (3) it is in some fashion determined during the course of the litigation; (4) the judgment resulting from the litigation is based upon the determination made, and (5) there is an opportunity for the losing party to appeal."

There is no question but that elements 1 and 5 are present here. The question is whether elements 2, 3 and 4 came into being as a result of the Iowa judgment. Existence of element number two depends on whether the subject matter of paragraphs 15, 18(a), 19 and 21 of the complaint in this case was put in issue by the pleadings in the Iowa litigation. To the extent that special defense No. 13 of Clinton's answer in the Iowa case covers the same subject matter as is contained in the mentioned paragraphs of the present complaint, that subject matter was put in issue by the pleadings in Iowa. The 13th defense charged that the subject matter of the Lechtenberg patents was in public use and on sale for more than a year prior to the filing of application for said patents and that patentee knew of such subject matter being in public use and on sale in the United States for over a year, but concealed such fact from officials of the U. S. Patent Office and as a consequence the patents were fraudulently and deceitfully obtained. This Court feels that it can be fairly stated that this subject matter could be considered as being included in the assertions in paragraphs 15, 18(a) and 19 of the complaint in this action. Other elements, however, of the mentioned paragraphs of the instant complaint were not necessarily put in issue in the Iowa litigation, unless it can be assumed that by asking for the allowance of attorney fees in its counter-claim, Clinton there put in issue all matters that might be considered as demonstrating fraud or inequitable conduct upon the part of Briggs & Stratton even though not specifically spelled out in the Clinton pleadings. This Court is of the opinion that it cannot be said that the pleadings in the Iowa litigation put in issue anything more than the distinct averments of its pleadings, because defendant's prayer for allowance of attorney fees was bottomed upon the assertion of its pleadings. Any averments of the complaint in this case that go beyond the contentions of the 13th defense in Clinton's answer in the Iowa litigation cannot be said to have been put in issue in the Iowa litigation. If, however, proofs were offered of the facts now the subject matter of the complaint in this case, and it can be said that the court considered that evidence and made a finding and an adjudication thereon, absence of allegations thereof in the pleadings would not prevent the Iowa findings being conclusive. For the reasons stated hereinafter, this Court does not believe that it has to determine whether or not the subject matter of the mentioned paragraphs of instant complaint were in fact put in issue by the pleadings and proofs in the Iowa litigation.

In the argument of the instant motion, Clinton's attorneys make concession of record that they do not intend to present evidence to support or rely upon the averments of their 13th defense in the Iowa litigation to aid the cause of action asserted in this case. The elimination of that issue from this case can be determined upon a pre-trial order, and does not require the granting of a motion for summary judgment at this time.

The 15th defense in the Iowa litigation charges fraud and deceit on the part of Briggs & Stratton in connection with the Madle patent. The complaint in this case in no way relies upon such fraud and deceit. Clinton's counsel advised the court that such subject matter will not be brought into this litigation.

Judge Graven's first findings in the Iowa litigation contained the following as his finding No. 17:

"17. The defendant claims that in the prosecution of the application for the patent pertinent prior art was concealed from the Patent Office. The Court finds that no pertinent prior art was concealed from the Patent Office in connection with the patent."

He was referring to Lechtenberg Patent No. 2693789 which, by his first judgment, he found to be valid.

This finding was not repeated in his final Findings of Fact, nor was the subject matter thereof discussed or treated in his final findings or judgment. Inasmuch as he set aside his first findings and the judgment entered thereon, "in its entirety" the mentioned finding No. 17 ceased to be any part of the final findings or determinations of this litigation.

"And the general rule is that where a court, in the discharge of its judicial function, vacates an order previously entered, the legal status is the same as if the order had never existed." Mitchell v. Joseph, 7 Cir., 117 F.2d 253, 255.

One may, indeed, speculate that the reason why Judge Graven did not repeat this finding or make any finding at all upon the subject was as a consequence of statements made by Mr. Raisch at the time of arguing the motion for new trial, exonerating Briggs & Stratton's attorneys from any fraudulent withholding of information from the Patent Office. Judge Graven, however, did not say so and this Court's speculations as to what reasons may have prompted his failure to specifically reconsider the matter are not controlling here.

The determination of this motion upon the basis of collateral estoppel depends upon whether this Court can say with certainty that because Judge Graven did not allow attorney fees to defendant Clinton, he thereby adjudicated and determined that Briggs & Stratton were not guilty of any of the conduct charged against them in the aforesaid paragraphs 15, 18(a), 19 and 21 of the complaint in this case.

The statute which would have permitted Judge Graven to award such attorney fees is 35 U.S.C. § 285:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

Judge Graven also ordered that under the circumstances of the case each party should pay one-half of the taxable costs. Our rule 54(d) provides:

"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; * * *"

This Court must answer the question of whether or not the only reason why Judge Graven refused, or could have refused, attorney fees to Clinton and ordered costs to be divided equally was a determination and finding by him that Briggs & Stratton was not guilty of any of the charges made against it in the mentioned paragraphs of the complaint in this case.

This Court recognizes that generally in patent and infringement litigation, a trial court considers the matter

of equitable or inequitable conduct in exercising his discretion to grant or withhold attorney fees.

In the case of Turchan v. Cincinnati Milling Machine Co., 208 F.2d 228, 229, Judge Simons of the Sixth Circuit, commented that:

> "It has been held that under this section (referring to 35 U.S.C.A. § 285, as it then read) that such fees are not to be allowed as a matter of course for Congress did not intend recovery of attorney fees to become the usual thing in patent cases, that the section commits the matter to the discretion of the District Court, *that the criterion for its exercise is bad faith of the unsuccessful party* and the reviewing court will not interfere unless there has been an abuse of discretion amounting to caprice or an erroneous conception of law."

To the same general effect is the language of Judge Allen of the Sixth Circuit in Swan Carburetor Co. v. Chrysler Corp., 149 F.2d 476, 478:

> "There is no evidence of bad faith. We think that the exceptional circumstances adverted to in Sprague v. Ticonic National Bank, supra, (307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184) which justify exceptional allowances, not authorized by statute, are such as exist in the case of fraud, oppression, or bad faith * * *."

A much quoted statement of this principle is contained in Park-In-Theatres v. Perkins, 9 Cir., 190 F.2d 137, 142, as follows:

> "Thus, the payment of attorney's fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, *or some other equitable consideration of similar force,* which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear."

In the case of Cutting Room Appliances Corp. v. Weatherbee Coats, Inc., D.C., 158 F.Supp. 231, 234, the District Judge in denying attorney fees held:

> "The Court further finds that the fact that plaintiff did not disclose to the Patent Examiner the prior art of the 'Regal' and 'Model A' machines is not, in itself, without further evidence, sufficient proof of fraud in the prosecution of the patent, such that would warrant the award of attorney fees to the prevailing party."

Recognizing the general rule, this Court does not feel that Judge Graven's disallowance of attorney fees must be judicially construed here as a finding and adjudication that none of the matters charged in the mentioned paragraphs of the complaint in this case were true and, therefore, a finding that there was no fraud, bad faith, or inequitable conduct of any kind in connection with the Lechtenberg patents and the institution of the infringement action. Certainly, this Court might well speculate as to whether as a matter of reality such was, in fact, the thinking of Judge Graven. However, in applying a doctrine such as collateral estoppel, this Court cannot expand the findings or judgment of Judge Graven or read into his findings and judgment adjudications or implications not expressed, unless it is crystal clear that the findings he did make had, beyond argument, a certain definite legal import.

Was there no other reason than an exoneration of Briggs & Stratton of all inequitable conduct that could have motivated Judge Graven in denying attorney fees to Clinton? Might not the failure of Clinton to put in all of its evidence at the first hearing—necessitating the vacation of Judge Graven's first judgment and the further hearing of the matter—have actuated Judge Graven in his discretion to refuse attorney fees to Clinton?

Judge Graven might also have been motivated by the fact that Clinton's attorneys in the motion for new trial offered to pay the expense incident thereto, including Briggs & Stratton's expenses, should the Court be of the opinion that Clinton was lacking in diligence in preparing its evidence for the first hearing. It is not, however, for this Court to speculate as to what Judge Graven's reasons were, though unexpressed. No request for a finding upon this question of good faith or equitable conduct was made by Briggs & Stratton.

This Court might also speculate that Judge Graven may have, after the re-hearing, had some feeling that there was some inequitable conduct on the part of Briggs & Stratton and that his denial of attorney fees to Clinton was an abuse of discretion. This Court, however, cannot pass upon Judge Graven's discretionary action nor speculate as to what was within his judicial contemplation when he rendered the judgment that he did.

"Where several questions are litigated in an action, and in a subsequent action between the parties on a different cause of action one of the questions is in issue and one of the parties relies upon the judgment as conclusive on the question, the burden of proof is upon him to show that the matter was determined by the judgment in the prior action. *If it does not appear whether the judgment was based on the determination of the question, the judgment is not conclusive in the second action.*" Restatement of Judgments, Sec. 68(1) page 306.

Even if this Court should feel that Judge Graven should have made some specific finding upon this question (and this Court does not indicate that such is its feeling) such omitted finding cannot be supplied here.

This Court, therefore, by granting Briggs & Stratton's instant motion would make a finding that was not made by the judge who tried the former case.

" * * * we can import into it (judgment) no adjudication the court never made merely because it ought to have made it." Jacobson v. Miller, 41 Mich. 99, 1 N.W. 1019.

This Court, however, feels that legal effectiveness should, in this litigation, be given to the statements made by Clinton's counsel in the Iowa case at the time of presenting Clinton's motion to reopen the proofs and for a new trial. The colloquy that occurred in this regard is set forth above. It is apparent from this that Clinton's counsel was there asking to be excused from its own failure to have put in testimony concerning the prior art and former public use of certain inventions which it claimed destroyed the patentability of the Lechtenberg patents. Counsel was there claiming to the Court that Clinton should not be charged with lack of diligence in discovering this evidence in time to have presented it at the original hearing. Clinton's counsel's attention was called to the fact that Clinton's pleadings had charged Briggs & Stratton with withholding information of prior public use from the Patent Office. Clinton's counsel thereupon said:

"If that charge is made, I don't stand upon it. * * * and I am sure we would agree we would withdraw it. I have known Mr. Jones and right here I want to say that is *not correct or encouraged.*"

A full review of what was said in this connection can result in only one conclusion. The concession was intended to be a complete exculpation of any wrong doing on the part of Briggs & Stratton's attorneys in the processing of the petition to make the Lechtenberg patent special. It was made for the purpose of having the trial court act upon such concession and admission. This Court views what was said and done as, in effect, a stipulation of fact, made of record for the purpose of obtaining the trial court's grant of a further hearing of the matter.

At the time of the colloquy under discussion, the issue of concealment of prior

art was in the Iowa litigation, and Clinton had, by the Court's finding 17, been defeated on it. If the case was to be reopened, it would still be an issue in the case. No amendment of the pleadings eliminating it was made at that time, nor thereafter. This Court feels that counsel's concession was tantamount to an agreement that on an issue distinctly relied upon by Clinton it was in truth defeated. If the rationale of the doctrine of collateral estoppel is to be given effect, a litigant defeated on an issue, by proof or admission, or both, should not be permitted to pinch out such issue and save it for re-trial on another day. After Clinton's admission in this regard, it was not necessary that thereafter a specific finding be made thereon. The concession of counsel was not an off-hand comment nor a statement made in the heat of argument by a zealous advocate. It was purposefully made, and disposed of at least part of an issue that was still involved in the Iowa litigation. This Court feels that it, together with all of the circumstances, including the Court's previous findings, brought about the equivalent of an adjudication on the point involved. Clinton should not now, for the purpose of this case, be allowed to recant and here to "renew the duel". E. V. Prentice Machine Co. v. Associated Plywood Mills, supra.

■ No text or decided cases have been cited to the Court which directly support its position in this regard. Neither has this Court by its own research been able to find authorities which will completely square its conclusion with the definitions made of collateral estoppel. This, however, should not prevent its application, if a situation arises where the philosophy and spirit of the doctrine should appropriately be applied. Collateral estopped is not a mathematical or mechanical formula. The Court is not making its ruling upon a characterization of what was done by Clinton's counsel as a judicial admission, having in mind the limitations applicable to judicial admissions (31 C.J.S. Evidence § 361,

page 1138. Wigmore, 3 E.D. 2593, et seq.).

This Court feels that the situation we are dealing with is not unlike the principle stated on page 304 Restatement of Judgments, Sec. 68(f):

"If a question of fact is put in issue by the pleadings, and at the trial the fact is admitted and in consequence no proof is offered by the party having the burden of proof, the question is litigated and a judgment is conclusive between the parties as to the question."

The writers of the Restatement of Judgments leave open a question which, perhaps, this opinion is daring to answer.

"(h) Effect of Stipulation. If a question of fact is put in issue by the pleadings, and the parties enter into a stipulation as to the truth of the fact, it is a question of the interpretation of the stipulation whether it is binding on the parties only with reference to the particular cause of action sued upon, or whether it is binding in subsequent actions between them based upon different causes of action." Restatement of Judgments, Sec. 68, page 304.

This Court's interpretation of what occurred in connection with the statement by Clinton's counsel that it was not true that Briggs & Stratton's counsel had "intentionally, or even knowingly, withheld any information from the patent office" convinces him that collateral estoppel should foreclose retrial of the facts fairly included in the hereinabove quoted colloquy.

This Court feels that the case of E. Ingraham Co. v. Germanow, 2 Cir., 4 F.2d 1002, 1003, is in point on the principle here. There a defendant sued for infringement consented to the entry of a decree holding that the plaintiff's patents were valid. Upon this concession, the plaintiff waived damages and costs. Later on, in another suit by the patentee against another claimed infringer, its patents were held invalid. Thereupon,

the defendant in the first action proceeded to infringe the patents, relying upon the determination of their invalidity in the later case. Judge Learned Hand held that they were estopped by the judgment that had been entered in the case first heard. He said:

"The decree entered upon their consent is a good estoppel, though the issues were not litigated, and while it stands they are as much bound by it as though the later suit had never been brought."

*Second:* The second reason assigned by Briggs & Stratton to support its motion for summary judgment is the assertion that on the testimony taken and the record made in the Iowa litigation, this Court should find that there remains no issue to be here tried upon the bad faith or misconduct charged in Clinton's present complaint in paragraphs 15, 18(a), 19 and 21. In its brief filed in this case, it asserts:

"The records and file of that litigation (Iowa case) *presumably* contain all evidence which could possibly be submitted on that issue. That evidence is, therefore, all the evidence that might be submitted to this court in a re-trial of the issues which Clinton now attempts to inject into this litigation. The records are before this Court as to all of the matters asserted by Clinton relating to the character of Briggs & Stratton's activities with respect to the Lechtenberg patents. The records disclose no genuine issue of fact."

This Court feels that this is unwarranted assumption. We construe it to mean that, on the issue in question, there is no other evidence beyond what was offered in the Iowa litigation that could conceivably be offered in the trial of the instant case. This Court has no right to make such an assumption. There was not filed, in support of the motion for summary judgment, any affidavit to the effect that the matters put in evidence and considered in the Iowa case constituted all of the evidence which could possibly be offered on this trial upon the claims presented by the mentioned paragraphs of Clinton's complaint in this action. If such an affidavit had been filed, Clinton would have had the right to file counter affidavits traversing the assertions of the Briggs & Stratton affidavits and, if such was the case, setting forth what facts, additional to the disclosures of the Iowa case, they would present to sustain their position. Clinton was not called upon to make such a sworn showing in the absence of affidavits by Briggs & Stratton. This Court does not feel that upon the motion, as presented, it should conclude that there can be no genuine issue as to any material fact relied upon by Clinton in the mentioned paragraphs of its complaint.

Certainly, if this Court was the trier of the facts and the only evidence before him was what was offered at the trial of the Iowa litigation, this Court would probably hold that there was no inequitable conduct and no fraud or deceit by Briggs & Stratton in its processing and attempt to protect the Lechtenberg patents. So far as they go, the findings of fact of Judge Graven and the comments made by the concurring opinion in the Court of Appeals appear to negate any inference of wrong doing on the part of Briggs & Stratton of the character now claimed in the complaint in this action. The complimentary observations by the trial court and by the concurring opinion in the Court of Appeals and the labeling of Clinton's own engine as a "slavish copy" of the Lechtenberg design, suggests that on the record made in the Iowa litigation, a trier of the facts might well conclude that the allegations of the mentioned paragraphs of Clinton's complaint here are without foundation. This Court, however, does not feel that it is in a position in the present posture of this litigation, to dispose of the motion for summary judgment because of impressions gained from reading the record and decisions of the Iowa litigation.

*Third:* The third position of Briggs & Stratton in its request for summary judgment is stated in the caption of the portion of its brief devoted thereto. There Briggs & Stratton assert:

> "In the absence of bad faith, the obtaining of a patent and bringing on an action for infringement by patentee does not constitute a violation of the anti-trust statutes of the United States, either alone or in combination with other activities, even though the patent may prove to be invalid."

 For the purpose of disposing of the motion before this Court, it is not necessary to disagree with the above general observation. No citation of authorities is needed for the proposition that a valid patent, in itself, creates a monopoly, and no violation of the anti-trust laws results from the obtaining of a patent or efforts to protect it by litigation, even though the patent finally proves to be invalid. Such authorities, however, do not go so far as to say that activities indulged in for the purpose of seeking to patent something known by the applicant to be invalid, and as a part of a scheme to create an illegal monopoly or restrain trade would be excluded as evidence in an action seeking to enforce our anti-trust statutes. It was stated in the case of Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, 666:

> "While it doubtless would not be within the Anti-Trust Acts to bring a suit to assert a patent or trade mark right whatever the motive, if the claim was valid, an attempt to assert a known invalid claim would be a different matter."

If, within the limitations placed upon it by the order to be made pursuant to this opinion, Clinton is able to prove that the obtaining of the patents in question and the infringement action were part of an evil and illegal scheme to create and maintain a monopoly, it should not be foreclosed from relying on such proofs.

### Conclusion

It is, accordingly, the opinion of this Court, and such will be its order, that the motion for summary judgment be denied, except to the extent that upon this trial, Clinton will be foreclosed and estopped from relying upon any charge of misconduct from which it was exculpated by Clinton's counsel in the Iowa litigation; this Court is of the opinion that the concession there made amounted to an adjudication and determination against the factual existence of such claimed misconduct.

An order in conformity with this opinion may be presented for signature.