**E. V. PRENTICE MACHINERY CO. and Prentice Machinery Works, Inc., Appellants,**

v.

**ASSOCIATED PLYWOOD MILLS, Inc., Appellee.**

**No. 15475.**

United States Court of Appeals Ninth Circuit.

Jan. 28, 1958.

---

**1.** Petitioner's Exhibit 10 and the affidavit of Henrietta Faerber with reference to a Sunbeam Coffeemaster.

J. Pierre Kolisch, Moe M. Tonkon, Portland, Or., for appellants.

Cleveland C. Cory, Manley B. Strayer, Portland, Or., for appellee.

Before FEE and HAMLEY, Circuit Judges, and ROSS, District Judge.

HAMLEY, Circuit Judge.

Plaintiffs appeal from a judgment for defendant in this treble damage action brought under § 4 of the Clayton Act, 15 U.S.C.A. § 15. Prior to the nonjury trial, defendant admitted liability, but denied that plaintiffs had sustained any damage. The trial court adopted this view. On appeal, plaintiffs contend that the controlling law of damages in antitrust suits was disregarded, and that the findings of fact, in substantial respects, are clearly erroneous.

Appellant E. V. Prentice Machinery Co. (Prentice) is an Oregon partnership, organized in 1947, engaged in the business of selling plywood manufacturing equipment. Appellant Prentice Machinery Works, Inc., is an Oregon Corporation, organized in March 1952 by the partners of Prentice. The corporation is engaged in the business of manufacturing plywood manufacturing equipment.

In 1950, Prentice became an authorized agent to import and sell automatic veneer patching machines manufactured in Germany by B. Raimann GMBH of Freiberg, Germany. Prentice thereafter sold a substantial number of these machines in interstate commerce.

Appellee, Associated Plywood Mills, Inc., (Associated) has, since 1941, engaged in the business of manufacturing and leasing veneer patchers known as Skoog machines. The Raimann and Skoog machines are competitive pieces of equipment.

On July 25, 1952, attorneys for Associated sent letters to twenty-nine customers of Prentice. In these letters, it was asserted that the Raimann machines infringed the patents on the Skoog machines. A demand was made that the recipient of the letter cease and desist its infringement, and that it make an accounting and pay damages to Associated for the claimed unlicensed use of the infringing machinery.

On August 8, 1952, Prentice commenced a declaratory judgment action against Associated, in the United States District Court for the District of Oregon. The purpose of the action was to have the Skoog patents declared invalid and not infringed. Associated filed an answer and cross-complaint, in which damages were demanded for patent infringement and unfair competition. One week after this action was begun, attorneys for Associated sent additional letters to certain customers of Prentice who had not replied to their letter of July 25, 1952, inquiring whether the alleged infringing activities had ceased.

A jury trial of the declaratory judgment action resulted in a verdict for Prentice. Prentice then applied for an allowance for attorney's fees pursuant to 35 U.S.C.A. § 70. The court, after hearing, found that Associated had been guilty of such unfairness and inequitable conduct that it would be grossly unjust for Prentice to bear the burden of its own attorney's fees. E. V. Prentice Co. v. Associated Plywood Mills, 113 F.Supp. 182, 188.[1] On May 8, 1953, judgment was entered in that action declaring the Skoog patents invalid, and awarding Prentice an attorney's fee in the amount of $7,500.

---

1. 35 U.S.C.A., § 70, was superseded on July 19, 1952, by 35 U.S.C.A. § 285. The parties were in agreement, however, that the new provision neither enlarges nor diminishes plaintiffs' rights. See 113 F.Supp. 182, 183.

Prentice then began the instant action in the same court on July 30, 1953. Seeking treble damages, Prentice alleged that Associated had engaged in specified activities violative of the antitrust laws. Principal among these, according to the complaint, was the action of Associated's attorneys in sending out the letters which have been referred to above. In the original complaint, Prentice sought recovery of triple the sum of $300,000. By pretrial amendments, the basic amount claimed was raised first to $600,000, and finally to $1,500,000.[2]

At the commencement of the trial, and for the purposes of this proceeding only, Associated admitted liability in violating the antitrust laws, and waived all defenses relating to the issue of its liability to plaintiffs. In doing so, it expressly reserved for determination in this action the question of whether appellants sustained any damage by any act of Associated asserted in this action. The trial therefore proceeded on the single issue of damages.

In rendering judgment for Associated, after the trial on this issue, the court found that neither plaintiff sustained any damage by reason of any act of Associated asserted or assertable in this action.

Appellants contend that, regardless of the evidence in this case, the trial court should not have made such a finding, because Associated was bound by contrary findings made in the prior proceeding. The particular findings entered in the previous case (113 F.Supp. 182) on which appellants rely are set out below.[3]

▮ The principle here sought to be invoked is that of collateral estoppel by judgment. This doctrine makes conclusive in subsequent proceedings determinations of fact, and mixed fact and law, that were essential to the earlier decision. Yates v. United States, 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356. It is predicated on the idea that once a party has fought out a matter in litigation with the opposing party, he cannot later renew the duel. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898.

In the prior proceedings, the question for determination was whether attorney's fees should be awarded to Prentice, the prevailing party in that case. In making that determination, the court properly indicated that it would be guided by the criteria stated in Park-in-Theatres v. Perkins, 9 Cir., 190 F.2d 137, 142. In the latter decision, it was held that an attorney's fee may be allowed in cases of this kind, where there is a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the lawsuit be left to bear the burden of his own counsel fees.

In holding that Associated had been guilty of such conduct, and that it would therefore be unjust for Prentice to bear its own counsel fees, the court in the prior proceedings made detailed findings of fact. The purport of these findings is that Associated, with full knowledge of the doubtful validity of the Skoog pat-

---

**2.** Prentice Machinery Works, Inc., was added as a party plaintiff shortly before the trial. An attorney for United States Plywood Corporation stated to the court, at the outset of the trial, that his client had purchased all of the assets and assumed all of the liabilities of Associated, and would be responsible for any judgment entered against Associated.

**3.** "* * * The receipt of such letters caused great consternation among Prentice's customers and effectively stopped sales of Raimann machines, as well as other equipment sold or distributed by Prentice." At page 184.

"Associated, when it sent letters to 29 of Prentice's customers threatening patent infringement actions and demanding damages, knew that such letters would effectively stop future sales of the Raimann machine and would probably require Prentice to inform its customers that it could neither defend them against such actions nor assume liability for damages in the event such cases were decided in favor of Associated." At page 187.

"Associated knew that Prentice would necessarily incur heavy financial losses by the mailing of such letters to Prentice's customers." At page 188.

ents, and for the purpose of destroying the Prentice competition while avoiding a court test, engaged in the criticized activity. These findings were adequate, under the Park-in-Theatres criteria, to support the order allowing attorney's fees.

The additional findings, to the effect that the objectionable conduct had actually resulted in damage to Prentice, were therefore not essential to that decision. This being the case, the doctrine of collateral estoppel by judgment does not bind Associated with respect to the prior findings on the question of damages.

As before indicated, the trial court here held that appellants failed to prove that they had sustained any damage.

Regarding the quantum of proof required to establish the fact of damage, the rule is that the plaintiff is required to establish with reasonable probability the existence of some causal connection between the defendant's wrongful act and some loss of anticipated revenue. Flintkote Company v. Lysfjord, 9 Cir., 246 F.2d 368, 392, certiorari denied 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46.

In an effort to provide such proof, appellants sought to show that they had suffered a substantial decline in business immediately after the wrongful acts were committed by Associated, and that this decline was caused by such acts. It was established by oral testimony and business records that Prentice experienced very poor business for a period of months after the letters were sent to its customers on July 25, 1952. No Raimann machines were sold between then and November 1952. The other business of the two appellants was also at a very low ebb at that time. After November 1952, the business of the two appellants slowly picked up. This followed, in point of time, the termination of the patent litigation and notification to Prentice customers that Associated's patent claims had been rejected by the court.

Appellants asked the trial court to infer, from this coincidence in point of time, that the decrease in business resulted from the wrongful acts. Additional evidence was also submitted tending to establish such a causal connection. There was oral testimony that Prentice was "deluged" with telephone calls and letters from customers who had received the Associated letter. All were concerned with the threat of infringement suits, and inquired what protection Prentice would give them.

There was also testimony that, as a result of such letters, customers and prospective customers indicated a loss of confidence in appellants. The business of manufacturing, selling, and servicing plywood machinery on a prosperous basis was pictured as one which was especially dependent upon maintenance of an unchallenged reputation for stability and responsibility.

Associated offered little, if any, evidence to dispute appellants' showing that they had experienced very poor business from July to November 1952, after which trade gradually picked up. Associated did, however, submit evidence in contradiction of appellants' contention and evidence that the latter's lack of business during this period resulted from the circulation of the threatening letters.

This evidence consisted of oral testimony, including cross-examination of appellants' witnesses, and certain letters taken from appellants' files. It tended to show that appellants' low level of business from July to November 1952 was the continuation of a trend which began in the spring of that year. This downward trend, according to the evidence produced by Associated, resulted partly from a deterioration of general economic conditions in the plywood industry. It was also, if Associated's testimony is to be believed, due partly to customer dissatisfaction with the Raimann machines, and to poor selling and public relations practices on the part of appellants.

The trial court apparently accepted as true appellants' showing that they experienced a low level of business in the summer and fall of 1952. But the court found, contrary to appellants' thesis, that the poor business then experienced did not result from the circulation of the

threatening letters. Finding Associated's evidence concerning causation more convincing that that of appellants, the court held that other factors were responsible.

Specifically, the court found that there was customer dissatisfaction regarding the Raimann machines and other machines purchased from appellants, and with the latter's service and sales policies. It was also found that appellants failed to conduct and operate their business in an aggressive and businesslike manner.

This, and a sharp decrease in plywood prices prior to and during the period in question, the court found, caused the decline in appellants' business. The downward trend in that business began, according to the findings of fact, several months prior to the circulation of the threatening letters. The ultimate finding, as before noted, was that neither appellant sustained any damage by reason of any act of Associated asserted or assertable in this action.

Much of appellants' argument in this court is directed to the proposition that the evidence which they submitted concerning the amount of damages sustained was sufficiently certain to support a substantial award. The trial court, however, found against appellants on the question of the fact of damage, and so did not reach the question of the extent of damage. It follows that the rules of law applicable to the determination of the amount of damages in cases of this kind do not concern us on this review.

■ Appellants' documentary evidence showing the low level of their business in the latter part of 1952 was, as before indicated, apparently accepted by the trial court as establishing that fact. On the basis of such evidence, and in the absence of conflicting evidence, the trial court could have inferred therefrom, and found, that appellants' business recession was caused by the wrongful acts of Associated. Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652.

But the trier of fact was not compelled to draw such an inference, where, as here, there was substantial evidence tending to show that the drop in appellants' business was due to other causes.[4]

---

4. In all but one of the cases cited by appellants, the question was not (as it is here) whether a finding *against* plaintiff on the question of causation (or amount of damages) is supportable, but whether a finding or verdict *for* plaintiff on this question may be sustained. See Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; American Crystal Sugar Co. v. Mandeville Island Farms, 9 Cir., 195 F.2d 622, certiorari denied 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357; Universal Pictures Co. v. Harold Lloyd Corp., 9 Cir., 162 F.2d 354; International Industries & Developments, Inc., v. Farbach Chemical Co., 6 Cir., 241 F.2d 246; Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, certiorari denied 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651; Connecticut Importing Co. v. Continental Distilling Corp., 2 Cir., 129 F.2d 651, certiorari denied 317 U.S. 664, 63 S.Ct. 65, 87 L.Ed. 533; American Can Co. v. Ladoga Canning Co., 7 Cir., 44 F.2d 763, certiorari denied 282 U.S. 899, 51 S.Ct. 183, 75 L.Ed. 792; William H. Rankin Co. v. Associated Bill Posters of United States, 2 Cir., 42 F.2d 152, certiorari denied 282 U.S. 864, 51 S.Ct. 37, 75 L.Ed. 765. Needless to say, a holding that the evidence is sufficient to support a finding or verdict that the established decrease in business was caused by a defendant's wrongful acts is not authority for the proposition that a contrary finding or verdict, on that fact question must be set aside.

In American Cooperative Serum Ass'n v. Anchor Serum Co., 7 Cir., 153 F.2d 907, certiorari denied 329 U.S. 721, 67 S.Ct. 57, 91 L.Ed. 625, cited by appellants, the trial court's action in setting aside the jury's special verdict to the effect that the plaintiff had not been damaged by the defendant's price cutting was affirmed. But the court there stated that it was applying 15 U.S.C.A. § 13(b), a provision of the Robinson-Patman Act. This section provides that, upon proof being made that there has been discrimination in the matter of prices, services, or facilities, the burden of rebutting "the prima facie case thus made" by showing justification shall be upon the defend-

It is true that a plaintiff may recover for loss to which a defendant's wrongful conduct substantially contributed, notwithstanding that other factors also contributed. Restatement, Torts, § 431. However, as pointed out in Momand v. Universal Film Exchanges, 1 Cir., 172 F.2d 37, 43, this is true only where the defendant's contribution is substantial and shown by the evidence. Here the court found, on the evidence submitted, that the wrongful conduct for which Associated is chargeable contributed not at all to appellants' poor business showing in 1952 or later years.

The evidence on the basis of which this finding was made is in conflict. The credibility of one of appellants' principal witnesses was also drawn into question because of the contradiction between his oral testimony and the letters he and others had written for Prentice. The trial court resolved this conflict and question of credibility in favor of Associated. The findings of fact which resulted were not clearly erroneous.

In reaching this conclusion, we have taken into consideration the fact that, in the prior hearing, and on two different occasions during the progress of the present hearing, the trial judge expressed the view that appellants' business stopped as a result of the circulation of the letters. When the evidence was all in, however, the judge, as he had the right to do, changed his mind as to what the evidence proves.

Since there was substantial evidence to support the final view, incorporated in the findings of fact, the circumstance that it is inconsistent with preliminary views expressed during the trial, or expressed in another proceeding which is not binding here, is without significance.

Appellants call attention to the importance which the trial court placed upon the absence of testimony by prospective customers that they had withheld custom because of the threatening letters.

This was not, as appellants urge, an indication that the court believed that, in cases of this kind, the fact or amount of damage could be proved only by such testimony. It means only that, faced in this particular case with conflicting evidence which the court thought preponderated in favor of Associated on the question of causation, the absence of direct customer-testimony which might have turned the scales the other way was considered significant enough to be noted.

This is not indicative of an erroneous view of the law of damages, but is a permissible exercise of the fact-finder's function to appraise the evidence, draw or reject inferences therefrom, and indicate the considerations which led to the view adopted.

Affirmed.

---

ant. No such statute is involved in the instant case. Moreover, there was not, in that case as there is here, substantial evidence contradicting the plaintiff's theory of causation.