330 F.2d 250
 The TRAVELERS INDEMNITY COMPANY, Edward J. Hart, Administrator of Estate of Isabelle Hart, deceased, Robert G. Clinnin, Guardian Ad Litem for Bruce Allen Ray, Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Spray, Gould & Bowers, Appellees.
 No. 18566.
 United States Court of Appeals Ninth Circuit.
 March 25, 1964.
 
 Schell & Delamer, Walter O. Schell and Richard B. Goethels, Los Angeles, Cal., for appellant Travelers Indemnity Co.
 James G. Butler, Compton, Cal., and James T. Townsell, Inglewood, Cal., for appellant Hart.
 Thorpe, Sullivan, Clinnin & Workman, and John G. Thorpe, John G. Thorpe, Los Angeles, Cal., for appellant Clinnin.
 Belcher, Henzie & Biegenzahn, and David Bernard, Los Angeles, Cal., for appellee Spray, Gould & Bowers.
 Crider, Tilson & Ruppe and Henry E. Kappler, Los Angeles, Cal., for appellee State Farm Mut. Auto Ins. Co.
 Before POPE, JERTBERG and MERRILL, Circuit Judges.
 POPE, Circuit Judge.
 
 
 1
 Isabelle M. Hart, originally the plaintiff in this action in the court below, had recovered in a California state court a money judgment against Bruce Allen Ray in the sum of $57,500 for damages on account of injuries received by Mrs. Hart as the result of Ray's negligent operation of a certain automobile. At the time of the injuries, Bruce Allen Ray was fifteen years of age. He was in the company of two other fifteen year old boys, one of whom, Thomas Risse, was the son of J. A. Risse, who owned the automobile that Ray was driving. Ray's father, James Ray, was the holder of an automobile liability policy issued by The Travelers Indemnity Company, which insured James Ray against liability for bodily injury or property damage arising out of the maintenance or use of a described "owned automobile" or any "non-owned automobile." The policy also provided for insurance of other persons, reciting that with respect to a non-owned automobile, a relative of James Ray should also be deemed an insured under the policy, "provided the actual use thereof is with the permission of the owner."
 
 
 2
 Asserting that Bruce Allen Ray was at the time here in question operating the Risse automobile with the permission of the owner and hence, that he was an insured under the policy referred to, Isabelle M. Hart brought this action as plaintiff against The Travelers Indemnity Company, seeking recovery of the amount of her judgment against Ray. Mrs. Hart's suit was pursuant to the provisions of California Insurance Code § 11580(b) (2).[1]
 
 
 3
 The action was commenced in the Superior Court for Los Angeles County. It was removed to the court below on the ground that plaintiff was a California citizen and that the defendant was incorporated in the state of Connecticut. Initially we notice one plainly erroneous finding of the court below. The first finding of fact was to the effect that The Travelers Indemnity Company "is now, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of California." We disregard this plainly erroneous finding — obviously an inadvertent one. Clearly the court did not intend to find itself without jurisdiction.
 
 
 4
 Travelers filed its answer in the court below. It also filed a third party complaint against Edward J. Hart (husband of Isabelle), State Farm Mutual Automobile Insurance Company (which had issued a liability policy to J. A. Risse), Spray, Gould & Bowers (attorneys for State Farm Mutual), Bruce Allen Ray and Butler & Hegner (attorneys for the Harts). This third party complaint alleged that State Farm's policy of automobile liability insurance was primary insurance with policy limits here applicable of $25,000, and that the coverage afforded by Travelers' policy was excess insurance over and above any valid and collectible insurance on the automobile driven at the time of the accident. It further alleged the doing of certain acts by the third party defendants in connection with the original personal injury suit brought in the state court by Isabelle Hart against J. A. Risse and Bruce Allen Ray, including the making of certain stipulations on behalf of State Farm, which Travelers alleged was undertaken and attempted for the purpose of shifting responsibility for any judgment recovered against Ray from State Farm to Travelers, and that such was a fraud on Travelers. The disposition we make of this appeal renders it unnecessary to discuss here these claims of fraud.
 
 
 5
 Travelers prayed that it have judgment for any losses, costs and expenses it had suffered, and that, if there was any duty to indemnify Ray, that State Farm be held liable for the same. It also prayed that the rights, duties, and obligations of all the parties to the action be declared.
 
 
 6
 During the pendency of the suit below, Isabelle Hart died, and Edward J. Hart was appointed administrator of her estate. The court ordered him substituted for Isabelle Hart. Judgment was entered against Travelers for Hart in the amount of $37,239.58 (calculated in a manner hereafter explained) and in favor of the third party defendants other than Bruce Allen Ray.
 
 
 7
 The principal issue, other than the so-called "fraud" issue raised by the third party complaint, was whether the Travelers policy covered Bruce Allen Ray as an insured at the time of the accident. It was Travelers' position that Bruce Allen Ray was then driving the Risse automobile without the permission of the owner. The trial court held against Travelers on this issue, and that ruling resulted in the judgment against it. Because of the complexity of the case and the somewhat involved questions raised on this appeal, we shall proceed to outline the events which ultimately led to the institution of this suit.
 
 
 8
 On May 11, 1959, J. A. Risse owned a 1958 Oldsmobile and another automobile, both insured against public liability by State Farm in the sum of $25,000 in the event of injury to one person. The policy insured Risse and anyone driving with his permission. On the evening of that day, Risse and his wife left home in one of the automobiles for the purpose of visiting Risse's brother at a sanitarium. The Oldsmobile was left in the family garage and the door to the garage was closed. Risse asked his son Thomas about going along and the boy replied that he had homework to do and he had to stay home. Previously the father had warned him that he was not to drive either of the automobiles — "I told him that he couldn't drive, and I was severe with him, I told him if he was caught driving again, he wouldn't drive until he was eighteen, would not get his driver's license." At that time the father suspected that the son had driven a car other than the Oldsmobile. The son surreptitiously had a key made to fit that other car, and he had driven it without his parents' permission or knowledge. In order to conceal his driving he had disconnected the speedometer cable. After driving it on one occasion he had not properly reconnected the cable so that his father could hear a clicking sound. This led to the father suspecting that the son had taken that car. On one earlier occasion, the son without his parents' permission or knowledge took the Oldsmobile out and drove it. He had driven about four times previous to the accident without permission or knowledge of his parents.
 
 
 9
 After Risse and his wife had left for the sanitarium and shortly after nightfall, Thomas got into the Oldsmobile in which the key had been left by his mother. He backed it out into the street, closed the garage door, and drove the car around the corner so as to conceal the fact that he had the car from the neighbors. This was because he knew he was not supposed to have the car.[2]
 
 
 10
 After Thomas had parked the car around the corner he picked up another fifteen year old boy who lived across the street from him and the two of them drove to the home of Bruce Allen Ray. They parked the car down the street some distance from Ray's house so the latter's parents would not see the car. Ray got in the car and the three boys drove off. None of the boys had a driver's license or a learner's permit. Each drove the car in turn and finally, just before the accident, Ray was driving. He drove at a speed of eighty miles per hour — this on a one way street near the end of which was the Hart apartment. He was unable to negotiate a right turn as he came to the end of the street and the car was driven over the curb and into the apartment house where Mrs. Hart lived, in consequence of which she received serious personal injuries.
 
 
 11
 Isabelle Hart and her husband, as plaintiffs, then filed suit in the Superior Court for Los Angeles County against Bruce Allen Ray, J. A. Risse (named as "Joe Risse"), and four John Does, alleging that on May 11, 1959, Risse owned the Oldsmobile automobile; that on information and belief Bruce Allen Ray and two of the John Does were driving the motor vehicle with the consent and permission and knowledge of the defendant Joe Risse. The complaint also alleged that the defendants so negligently entrusted, managed, maintained, drove and operated the motor vehicle that it caused personal injury to Isabelle Hart to her damage in the sum of $30,000 and caused damage to plaintiff's furnishings in the sum of $1500.
 
 
 12
 Under the State Farm policy previously mentioned, J. A. Risse was the named insured. He was covered for bodily injury and property damage liability. Also designated as insured were Risse's relatives and "any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured. * * *" Risse promptly reported the accident to State Farm, which company proceeded to investigate, taking statements from the Risses and the two boys who were in the car at the time of the accident. State Farm concluded that Ray did not have permission from J. A. Risse and decided that it would not defend Ray, but would defend J. A. Risse only. It does not appear from the record that actual notice of this determination not to defend him was given to Bruce Allen Ray; but it may be inferred that he did learn that he was not to be defended by State Farm because the law firm of Spray, Gould & Bowers, third party defendants here, at the instance of State Farm filed an answer to the Hart suit on behalf of the defendant Risse, while an answer on behalf of Bruce Allen Ray was filed by James Ray, his father and guardian ad litem, acting in propria persona. In this answer Ray alleged that at the time of the accident he was operating the automobile "with the knowledge and consent of and acting as the agent of TOM RISSE, a minor, who then and there was in possession and control of said automobile as the agent of the owner thereof, the defendant, JOE RISSE. * * *" He alleged that he was acting under the express direction and control of Tom Risse.[3]
 
 
 13
 Ray reported the accident to Travelers which investigated the matter and concluded that Ray did not have permission; it declined to defend and suggested that Ray tender the defense to State Farm.
 
 
 14
 Butler, the Harts' attorney, testified that he had it in mind to settle the action, insofar as it concerned Risse, for $2500, and that then he planned to obtain a judgment against Ray which through collateral estoppel would bind Travelers making it liable for the full amount of the judgment against Ray. For reasons not here material he wanted to get Spray, Gould & Bowers and the Risses out of the case so that he could then proceed against Ray and Travelers.
 
 
 15
 Eventually Spray, Gould & Bowers accepted this offer on behalf of the defendant Risse and State Farm and an understanding was had that the settlement would be accomplished through a stipulated judgment in favor of the Harts and against Risse. In anticipation of this, the Harts signed a release for the stated consideration, reciting that they released and forever discharged Thomas Risse, J. A. Risse, and State Farm "from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 11th day of May, 1959. * * * This is not a release as to Bruce Allen Ray."
 
 
 16
 On August 30, 1960, when the case was called up before the Superior Court, Ray was not present or represented. That morning Spray, Gould & Bowers had received a call from Butler's firm advising that it was necessary for Spray, Gould & Bowers to have an attorney present in the Superior Court to stipulate to a $2500 judgment. The only attorney then available in that office was a Mr. Howard, a recent addition to the firm's force. The calendar clerk of the firm sent him to Inglewood where the court was sitting with instructions to stipulate to the judgment, informing him that the case was to be settled for $2500. Mr. Howard went to the court with the office file, but he did not examine it and he had no knowledge with respect to the case. After a brief conversation between Butler and Howard, Butler announced, "This is a stipulation as to judgment against Joe Risse alone, as the owner of the automobile." He then added, "We stipulate to take a judgment against him in the amount of $2500 and to allow the Court to make a finding of fact with respect to paragraph III of the complaint that Bruce Allen Ray was driving the described motor vehicle, in the complaint, with the consent and permission and knowledge of the defendant Joe Risse." Mr. Howard then said, "So stipulated, your Honor."[4]
 
 
 17
 With respect to the stipulation that Ray was driving with the permission and consent of J. A. Risse, Howard testified that when he reached the courtroom, Butler had asked him if he would stipulate to that fact. Howard did not know who Ray was. Butler said nothing to Howard about why he wanted the stipulation as to permission and consent, nor did Butler mention that there was a policy coverage problem in the case. Howard's testimony was: "Q. When you entered into the stipulation, was there any particular reason why you entered into the stipulation of consent and permission at that time? A. Well, Mr. Butler told me that there was permission and consent, and since the case was settled, I said, `Fine. I will stipulate.' Q. The entire reliance, then, that you had, or the entire source or information that you had at the time you entered into a stipulation relative to consent and permission, was the fact that Mr. Butler advised you that there was consent and permission, is that right? A. That is correct, yes." Howard then left the court and Spray, Gould & Bowers and State Farm had no further participation in the case.
 
 
 18
 On the next day, August 31, 1960, Bruce Allen Ray and his guardian ad litem were present and the case was again called. Medical evidence was received showing the extent and character of the injuries received by Mrs. Hart, and Ray was called as a witness on behalf of the plaintiffs. He testified as to the circumstances attending the accident, that he was driving the automobile, that it was moving at seventy-five to eighty miles per hour, that he was unable to make the turn at the end of the street, that the car went through the house, that he had been permitted to drive the automobile by Thomas Risse and that he had heard that Thomas had previously driven his father's automobile. Following that testimony, counsel for the Harts moved to amend the complaint to increase the damages prayed for from $30,000 to $150,000. There was no objection from the Rays, and the amendment was made. Mr. Hart then testified further concerning the injuries to his wife. Counsel for plaintiffs then called the court's attention to the stipulation of the previous day relating to permission and stated, "I'll let it go on the stipulation. I think the stipulation is sufficient." Ray, of course was not a party to that stipulation.
 
 
 19
 The trial judge then signed findings prepared by the Harts' counsel to the effect that J. A. Risse was the owner of the automobile; that Bruce Allen Ray was driving the car with the consent, permission and knowledge of J. A. Risse; that as a result thereof Isabelle Hart was hurt and injured; that her damages for personal injuries amounted to $57,500; that she was entitled to recover that sum from Bruce Allen Ray as well as the sum of $2500 for property damages suffered by herself and her husband. Judgment was entered upon those findings.
 
 
 20
 Thereafter counsel for the Harts demanded that Travelers pay Mrs. Hart's judgment for $57,500. When the demand was refused, Butler brought the present suit against Travelers only. Travelers' answer denied the allegation that Bruce Allen Ray was driving the senior Risse's automobile with the latter's permission or consent. It alleged that he was driving the automobile without the owner's consent. In its third party complaint, to which we have previously referred, Travelers claimed that the settlement and stipulation regarding permission, which was made on August 30, were the result of a fraudulent scheme concocted between Butler on the one hand, and Spray, Gould & Bowers, on the other, to shift liability to Travelers.
 
 
 21
 In the present action, the plaintiff demanded trial by jury, and on the trial the district court submitted to the jury a single interrogatory, as follows: "Did Thomas Risse have the permission, express or implied, of Joseph Risse to use the 1958 Oldsmobile on the evening of May 11, 1959?" The jury in returning their verdict answered that question — "No."[5] The district judge rejected this finding of the jury and declined to enter judgment upon that verdict. He held that Travelers was estopped to litigate the issue whether the automobile was being driven with the permission of the owner, and that Travelers was bound by the finding and judgment against Ray in the California Superior Court.[6] Referring to the finding of the California Superior Court that the automobile was driven by Bruce Allen Ray with the consent of J. A. Risse, the district court found, "That said finding of fact made by the Superior Court was a necessary and proper finding and that the defendant, Travelers, is bound thereby, and that said finding of fact is res judicata as to Travelers." On the strength of this finding the district court granted judgment in favor of the estate of Isabelle Hart and against Travelers, from which judgment appeal has been taken.[7]
 
 
 22
 It is our opinion that the district court was plainly in error in holding that the jury verdict was to be disregarded and that Travelers was bound by the Superior Court's finding of permission, by what the district court called "res judicata". So far as Hart's judgment against Ray was concerned, proof of permission from the owner was not essential or necessary to the judgment against Ray. In the context of this case, permission from the owner would be relevant solely to the question of insurance coverage — the question whether Ray was an additional insured under the omnibus clause of Travelers' policy. Indeed, if the case against Ray were tried to a jury it would be reversible error even to mention insurance coverage at the trial. Mahnkey v. Bolger, 98 Cal.App.2d 628, 220 P.2d 824. Hart's recovery against Ray would have been precisely the same whether Ray was or was not insured. In this respect, the case against him wholly differed from that against J. A. Risse, for recovery against Risse would be dependent upon proof of driving with permission under California Vehicle Code § 17150, as noted previously. It is plain that as against Ray the finding of permission was not proper and in no wise an essential one.
 
 
 23
 As we shall note hereafter, under California law it was probably the duty of Travelers to provide a defense for Ray, at least initially upon institution of suit against him. Under such circumstances, Travelers would be deemed in privity with Ray in respect to that suit, and as to any issue material or essential to the suit against Ray, Travelers would be bound by the judgment.[8]
 
 
 24
 The rule which the district court attempted to apply here is not, strictly speaking, called "res judicata"; it is, rather, the doctrine of collateral estoppel, since the cause of action asserted in the court below against Travelers was not the same cause that Hart prosecuted in the Superior Court against Ray. This distinction was noted by Mr. Justice Traynor in Taylor v. Hawkinson, 47 Cal.2d 893, 895-896, 306 P.2d 797, 799, where he quoted earlier statements substantially the same as that in the leading case of Cromwell v. County of Sac, 94 U.S. 351, 352-353, 24 L.Ed. 195.[9]
 
 
 25
 In applying the doctrine of collateral estoppel the rule is that stated in Yates v. United States, 354 U.S. 298, 336, 77 S.Ct. 1064, 1086, 1 L.Ed.2d 1356, as follows: "That doctrine makes conclusive in subsequent proceedings only determinations of fact, and mixed fact and law, that were essential to the decision." (Emphasis ours.) This court had occasion to apply the same rule in E. V. Prentice Mach. Co. v. Associated Plywood Mills, 9 Cir., 252 F.2d 473, 477. There it appeared that in an earlier case in which certain parties were seeking allowance of attorneys' fees the court had found that the defendant had been guilty of unfairness and inequitable conduct so as to make it proper to allow attorneys' fees. The court in the first action had added to its findings a finding that such conduct had resulted in damage to the plaintiffs. In a later action to recover damages for the wrongful conduct, the court found that plaintiff had sustained no damage. It was contended that the earlier finding that there had been damage prohibited the court from later finding that there was no damage. This court said, "The additional findings, to the effect that the objectionable conduct had actually resulted in damage to Prentice, were therefore not essential to that decision. This being the case, the doctrine of collateral estoppel by judgment does not bind Associated with respect to the prior findings on the question of damages." 252 F.2d at 477. Such is the rule in California. See Geddes & Smith, Inc. v. St. Paul Mercury-Indemnity Co., 51 Cal.2d 558, 334 P.2d 881.[10] The generality of this requirement is indicated by Restatement, Judgments § 68(1): "Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. * * *" (Emphasis ours.)
 
 
 26
 It is of no significance here that Risse was also a defendant in that suit and that as against Risse whether the car was being driven with his permission was a proper and essential issue. It is not permissible for a party such as the plaintiff here to manufacture a case for collateral estoppel against one defendant such as Ray by importing the other defendant and litigating an issue material to the latter, but which is in no way material to Ray. In this case Travelers had no relation with or duty to Risse. It was not in privity with Risse and what was adjudged against Risse raised no collateral estoppel against Travelers.[11]
 
 
 27
 It follows that the court should have entered judgment upon the verdict of the jury and thus rendered a judgment in favor of the appellant, Travelers, upon the merits. Since a jury had been demanded in the case, all parties were entitled to a jury trial provided the case was one which by its nature was properly triable by jury. That demand could not be withdrawn without the consent of all parties. Rule 38(d), Fed. R.Civ.P. Since the action was brought for the recovery of money damages, although it was based upon a state statute, its resemblance to an action at common law for damages would make the action one required to be tried by jury if demanded. Leimer v. Woods, 8 Cir., 196 F.2d 828, 834-836. Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L. Ed.2d 691; Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988.[12]
 
 
 28
 Much was said in the briefs and in the oral argument with respect to the claim that it was the duty of Travelers to appear for Ray and defend him at the time Travelers received the complaint and summons from him. The California cases are quite strict in holding that it is the duty of a liability insurance company, such as Travelers, to undertake the defense of a possible insured in any case of doubt as to whether there is coverage. In Fireman's Fund Ins. Co. v. Chasson, 207 Cal.App.2d 801, 804, 24 Cal.Rptr. 726, 727, the court approved the memorandum decision of the trial judge who had "noted that the duty to defend is a separate coverage from the duty to indemnify [citing cases]. He further asserted that the duty to defend is only excused where the complaint in the case against the insured shows plainly on its face the injury complained of is not covered by the policy * * *." In that case after the action had begun under circumstances giving rise to the insurance company's duty to defend, the insurer procured a judgment in a declaratory relief action that the claim in question was not within the coverage of the policy. This, the court said, terminated the insurer's duty to defend. The California courts have noted in other cases that the duty of an insurer to indemnify and to defend are two different covenants. "Under the policy the obligation of respondent to defend an action brought against its assured is broader than its obligation to pay indemnity." Firco, Inc. v. Fireman's Fund Ins. Co., 173 Cal.App.2d 524, 527, 343 P.2d 311, 313.[13]
 
 
 29
 The rule respecting this other and different covenant to indemnify is stated in Restatement, Judgments § 107(a): "In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against (a) the indemnitee, both are bound as to the existence and extent of the liability of the indemnitee, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense." This is clarified in comment g as follows: "g. Relevant issues. The rule stated in Clause(a) binds both the indemnitor and the indemnitee only upon issues relevant to the proceeding. The judgment against the indemnitee does not decide issues as to the existence and extent of the duty to indemnify. Thus, in a subsequent action the indemnitor may show that the circumstances under which he is required to give indemnity do not exist." (Emphasis ours.)
 
 
 30
 This is precisely the situation here. The judgment against Ray could at most only bind Travelers "as to the existence and extent of the liability of the indemnitee [Ray]" i. e., as to negligence and the extent of the damages. But that judgment against Ray "does not decide issues as to the existence and extent of the duty to indemnify."
 
 
 31
 But the duty of Travelers to commence the defense of Ray, under some theory that the complaint against Ray did not positively negative such a duty, does not afford any party to this suit any right to relief against Travelers. Ray does not claim any recovery against Travelers based on such failure to defend. Ray has filed here an answer in which he asserts that State Farm was obligated to defend him and is liable to indemnify him against the judgment of Hart to the extent of its policy limits of $25,000. He also asserts that Travelers must indemnify him for the amount of that judgment in excess of the liability of State Farm. But there are no allegations by him asserting loss or damage because of Travelers' failure to defend him. He does not allege that he was forced to employ counsel and put to the expense incident thereto. He prays for no such relief. (Nor are there any such allegations or prayer with respect to State Farm.) The jury having found in substance that Ray was not an insured under the Travelers' policy, no obligation to indemnify Ray ever arose.[14]
 
 
 32
 Travelers asserts that under the facts of this case it could not be required to defend Ray who wanted to be held driving with permission, when its own interest was to show lack of permission, and hence lack of coverage. It cites Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 4 Cir., 177 F.2d 793, and Hammett v. McIntyre, 114 Cal.App.2d 148, 249 P.2d 885. Since we have noted that nobody is suing Travelers for damages for failure to defend Ray, we find it unnecessary to speculate how this conflict of interest should be dealt with.
 
 
 33
 Both insurance companies are engaged here in interesting attempts to have us hold the other one liable to pay indemnity.[15] In its attempt to hang liability on Travelers, State Farm cites Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883. That was a case in which the insurer company refused to defend its insured, making a "wrongful denial of coverage." The insured, defending through his own employed counsel, received an offer to settle well below the policy limits.
 
 
 34
 The insurer company, apprised of this still, refused to settle. Thereafter judgment went against the insured for a sum in excess of the policy limits. The court held the company had violated its "implied covenant of good faith and fair dealing", and in refusing to accept a reasonable settlement it became "liable for the entire judgment against the insured even if it exceeds the policy limits".
 
 
 35
 In citing that case State Farm fails to note its special facts and gives it an interpretation the possible consequences of which we are sure State Farm would not welcome. Says State Farm of Comunale: "This case establishes the proposition that an insurer who wrongfully refuses to defend its insured is liable for the entire judgment recovered against the insured."[16] Comunale makes no such broad ruling. In that case there was no question but that the policy of the insurer covered the insured, and the accident. As the court put it, there was "wrongful denial of coverage". In the case before us, Travelers made a rightful denial of coverage. There was no coverage, as the jury determined. Travelers' duty to defend, under the rule previously stated, is not one arising out of its policy actually covering and insuring Ray, it is a temporary duty based solely on the fact that when an action is brought there may be "considerable doubt" as to coverage, the time to appear and defend is limited, and whether the insurer may ultimately have to pay any judgment "may not be determinable when the action is begun." Firco, Inc. v. Fireman's Fund Insurance Company, supra (343 P.2d at 313). As stated in that case, if and when it becomes certain that the policy does not cover the accident, "the insurer may turn back the defense." If Travelers owed any duty of defense here, it was only of such temporary character. The limited consequences of such a failure to defend were noted in Columbia Southern Chemical Corp. v. Manufacturers & Wholesalers Indem. Exch., 190 Cal.App.2d 194, 204, 11 Cal.Rptr. 762, 768, as follows: "If there is a wrongful refusal to defend, the insurer loses his right to control the litigation, and is liable for any reasonable settlement arrived at in good faith thereunder and paid by insured.[17] If a settlement is made by the insured, the question of whether or not the facts of the case come within the policy coverage is still open and may be determined on evidence adduced in the trial in which the insured seeks to recover from the insurer."[18]
 
 
 36
 This brings us to the question raised by Ray's guardian on his cross appeal as to whether State Farm is obligated to indemnify Ray for the first $22,500 of the state court judgment. It will be recalled that pursuant to the stipulation agreed to by Mr. Howard for the firm of Spray, Gould & Bowers, and on behalf of State Farm and Risse, findings of fact, conclusions of law and judgment were entered in the state court action to the effect that Ray was driving the car with J. A. Risse's permission, and a judgment for $2500 was entered in favor of Hart against J. A. Risse. The court below held that notwithstanding State Farm had entered this stipulation that Ray was driving with the permission of Risse, it owed no duty to indemnify him because he never tendered defense of the suit against him to State Farm and never demanded that the latter defend him. On these appeals Ray argues that State Farm knew of the action against Ray for it had the papers in the case, as it was then defending Risse. State Farm's claims superintendent testified that State Farm undertook to defend Risse and referred the file to a firm of attorneys for that purpose, and about October 22, 1959, it rejected the idea of defending Ray. This was after an investigation of the circumstances relating to Ray's driving.
 
 
 37
 The court held that "no demand was made upon State Farm, and it would be inequitable to hold State Farm for a defense in the absence of demand therefor." Ray's guardian ad litem responds that such holding does not dispose of the question of State Farm's duty to defend Ray. He notes that in October, 1959, ten months before the case came on for trial, State Farm considered the question of defending Ray and decided it would not do so. As previously noted, Ray knew or must have known that State Farm had made this decision. Ray now argues that for this reason State Farm waived tender of defense since it would have been an idle act for Ray to tender a defense to State Farm when the latter had already decided it would not defend. To demonstrate that such a waiver would be a substitute for a tender which under the circumstances would have been an idle and useless act, Ray cites Williams v. General Insurance Co., 8 Cal.2d 1, 63 P.2d 289. Ray then goes on to argue that the moment State Farm, through its attorney, Mr. Howard, stipulated on August 20, 1960, that Ray was driving with permission of Risse and judgment to that effect was rendered against Risse with whom State Farm was in privity, State Farm became estopped to deny that Ray was an insured within the meaning of the policy issued to Risse, because it was there adjudged on that stipulation that Ray was driving with permission. At that time State Farm even obtained from Ray a release which the court below pointed out was not binding upon Ray since he repudiated it, he being a minor. Says Ray in his brief: "Once State Farm had stipulated that Ray was driving the car with permission and furthermore, once a judgment had been entered in the action to the effect that Risse was liable based upon the fact that his car was being driven with his permission, a contractual relationship between State Farm and Ray arose."
 
 
 38
 We think that this argument, though plausible, will not stand analysis. It is true that in connection with the settlement on behalf of Risse a stipulated judgment was entered with findings of driving with permission. Obviously that stipulation was intended solely as a basis for Risse's settlement. Clearly enough it was not then intended to stipulate that State Farm was admitting liability to indemnify Ray. The question is whether the judgment entered on this stipulation collaterally estops State Farm from denying coverage and denying that, so far as Ray's rights were concerned, he was driving with permission. The sections of the Restatement of the Law of Judgments, to which we have previously alluded, furnish the answer here. Thus comment f to § 107, supra, states as follows: "The rule stated in this section applies therefore even though the judgment against the indemnitee is by default or although the indemnitee does not carefully defend the action. On the other hand, the indemnitor is not bound by judgment by confession. * * *" (Emphasis ours.)
 
 
 39
 Also in the discussion under Restatement, Judgments § 68, the following appears in comment h: "Effect of stipulation. If a question of fact is put in issue by the pleadings, and the parties enter into a stipulation as to the truth of the fact, it is a question of the interpretation of the stipulation whether it is binding on the parties only with reference to the particular cause of action sued upon, or whether it is binding in subsequent actions between them based upon different causes of action." Here, it is plain, the stipulation made by Mr. Howard could only be interpreted as binding with reference to the particular cause of action which was there settled, namely, Hart's action against Risse.
 
 
 40
 The same rule has been established in California. In the case of Taylor v. Hawkinson, 47 Cal.2d 893, 306 P.2d 797, the Supreme Court of California was dealing with the question of the effect of a judgment based upon a compromise verdict claimed to create an estoppel or conclusive adjudication with respect to issues involved in the first action and sought to be relitigated in a second action. The court regarded the first judgment as tantamount to a judgment agreed upon as a compromise of the first action. Citing other cases the court said: "Regardless of the effectiveness of such a compromise in extinguishing the causes of action or in settling the rights directly involved therein * * * it does not constitute such a determination of the issues involved as to render them res judicata where distinct rights are sought to be litigated in a separate cause of action." 47 Cal.2d at 896, 306 P.2d at 799. It also cited Restatement, Judgments § 68 to which we have just referred.
 
 
 41
 In other words, a judgment entered through compromise although it extinguishes the particular cause of action which the parties were settling, such as the Hart claim against Risse, did not constitute "such a determination of the issues involved as to render them res judicata," where the distinct rights of Ray against State Farm are sought to be litigated in this separate action.
 
 
 42
 We hold therefore that State Farm is also entitled to have judgment rendered in its favor and against Ray since the verdict of the jury established finally and conclusively that Ray was not driving with permission of the owner. Accordingly, the decision of the district court is reversed and the cause is remanded with directions to set aside and vacate the judgment against The Travelers Indemnity Company and to enter judgment that neither Edward J. Hart, Administrator of the Estate of Isabelle Hart, deceased, nor Robert G. Clinnin, guardian ad litem for Bruce Allen Ray, is entitled to any relief against either the State Farm Mutual Automobile Insurance Company or The Travelers Indemnity Company.
 
 
 43
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 "A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this State unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein
 * * * * *
 "(b) Such policy shall not be thus issued or delivered to any person in this State unless it contains all the following provisions: * * * (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."
 
 
 [2]
 The boy testified as follows: "Q. When you got into the Oldsmobile on May 11, 1959, you knew you were not supposed to drive that automobile, didn't you? A. Yes, I did. Q. And when you got into the automobile on that occasion, your parents had never told you you could drive the automobile, had they? A. That's right."
 On approximately three occasions after Thomas Risse became fifteen years of age, his father had taken him to a private parking lot and there gave him lessons in driving. At those times he did not drive on any public highways.
 
 
 [3]
 During the oral argument it was stated by counsel that under California law if Thomas Risse had his father's permission to drive the automobile then Thomas's permission to Ray would make the latter one driving with permission of the owner regardless of whether the owner had prohibited any such sub-permission. All parties during the oral argument conceded that such was the rule. Our examination of California decisions leads us to question the accuracy of that statement. The cases cited in support of the stated rule include Souza v. Corti, 22 Cal.2d 454, 139 P.2d 645, 147 A.L.R. 861; and Peterson v. Grieger, Inc., 57 Cal.2d 43, 17 Cal.Rptr. 828, 367 P.2d 420
 These were cases dealing with the question of permission under a California statute which is now Vehicle Code § 17150, which reads as follows: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."
 Evidently counsel and the trial court overlooked the case of Norris v. Pacific Indemnity Co., 39 Cal.2d 420, 247 P.2d 1, where the court expressly stated that the rule of Souza v. Corti, supra, would not be applied so as to allow the sub-permittee to claim protection by an omnibus clause, such as that here involved, in a liability insurance policy. The trial court assumed that the rule of the Souza case would apply here. See Venne v. Standard Accident Ins. Co., 171 Cal.App. 2d 242, 340 P.2d 30; Harbor Ins. Co. v. Paulson, 135 Cal.App.2d 22, 286 P.2d 870. We have some difficulty in reconciling what was said in Norris v. Pacific Indemnity Co., supra, with Exchange Casualty and Surety Co. v. Scott, 56 Cal. 2d 613, 15 Cal.Rptr. 897, 364 P.2d 833, and Jurd v. Pacific Indemnity Co., 57 Cal.2d 699, 21 Cal.Rptr. 793, 371 P.2d 569. Since our decision does not turn upon the resolution of this question we assume for the purpose of this case that the trial court was correct in its holding that if Thomas Risse had permission he could sub-delegate permission to Ray particularly in view of the fact that the parties here have not questioned that ruling.
 
 
 [4]
 It is noteworthy that since the arrangement was that a stipulated judgment would be entered, there was no necessity for any stipulation other than that a judgment in that amount should be entered. Butler, however, evidently chose to proceed as though it were a case of default and he endeavored to make a prima facie case by obtaining a further stipulation as to the driving with permission
 
 
 [5]
 It will be noted that this interrogatory presented the key question on this issue, since under the decisions cited supra, note 3, any permission to Bruce Allen Ray was dependent upon whether Thomas Risse had his father's permission
 
 
 [6]
 The district court explained its action in its opinion as follows: "When the action at bar came on for trial a jury was impanelled to determine the issue whether the Oldsmobile was being driven with permission of its owner. At the time the jury was impanelled and during the course of trial, this Court stated it was reserving to itself the decision whether the judgment in the State Court action, based upon a specific finding that the automobile was being driven with the consent of its owner, was res judicata. The impanelling of the jury and the taking of its verdict were based upon the premise that this Court would make a determination of the question of res judicata before determining the force of the jury's verdict."
 
 
 [7]
 The judgment rendered by the district court was in the sum of $32,500 instead of $57,500, as the court reduced the latter amount by $25,000, which was the amount of the primary coverage under the State Farm Mutual policy. Although this reduction is challenged by the Administrator of the Hart estate by a cross appeal, the conclusion that we have reached in this case makes consideration of that cross appeal unnecessary
 
 
 [8]
 For such a case, see United Pacific Insurance Co. v. Meyer, 9 Cir., 305 F.2d 107. In that case the holding that the insurer was bound by a finding in a prior suit which it refused to defend was based upon our determination that the fact as to which estoppel was applied was a fact that "was essential to the maintenance of the state court [prior] actions, and the allegations and findings to this effect were material therein." 305 F.2d at 118
 
 
 [9]
 See also United States v. International Building Co., 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182, and cases there cited
 
 
 [10]
 "An insurer that has been notified of an action and refuses to defend on the ground that the alleged claim is not within the policy coverage is bound by a judgment in the action, in the absence of fraud or collusion, as to all material findings of fact essential to the judgment of liability of the insured. The insurer is not bound, however, as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment against the insured." 51 Cal.2d at 561-562, 334 P.2d at 883
 
 
 [11]
 In addition, as noted hereafter where we discuss the question of the liability of State Farm, the judgment against Risse was a stipulated one, and it could not give rise to collateral estoppel against anyone
 
 
 [12]
 In Ivy v. Pacific Automobile Ins. Co., 156 Cal.App.2d 652, 663, 320 P.2d 140, the California court alluded to a suit similar to this one as an "equitable action". But as held in Simler v. Conner, supra, "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."
 
 
 [13]
 See also Karpe v. Great American Indem. Co., 190 Cal.App.2d 226, 234, 11 Cal.Rptr. 908; American F. & C. Co. v. Pennsylvania T. & F. M. Cas. Ins. Co., 5 Cir., 280 F.2d 453, 458; Journal Pub. Co. v. General Cas. Co., 9 Cir., 210 F.2d 202; Lee v. Aetna Casualty & Surety Co., 2 Cir., 178 F.2d 750
 
 
 [14]
 If Ray were claiming that he had suffered loss through Travelers' failure to defend him, it would be incumbent upon him first to create an issue as to that claim by appropriate pleading or by claim inserted in a pretrial order, and second, on the trial, to make an offer of proof in support of such a claim. Neither was done. Ray's brief on appeal attempts to specify error as follows: "Failing to try the issue of the damages sustained by Ray by reason of the failure of Travelers to furnish him a defense." There is nothing in the record to support such a specification and it is on its face inadequate in failing to comply with our Rule 18(2) (d) which requires specifications alleging error through rejection of evidence to quote "the full substance of the evidence admitted or rejected." We can find nowhere in the record either proof or offer of proof of damages or expenses claimed to have been incurred by Ray because he was not defended by Travelers. After the jury's verdict had been returned Ray filed a memorandum with the court arguing that he had rights under the insurance policy including the right to defense. This, however, was after the jury verdict had been returned and when there was nothing to be done as to Travelers except to enter judgment that Ray was not an insured under its policy
 Ray asserts that the court refused to allow proof of the detriment suffered by him because he was not afforded a defense. If such a claim had been made by proper pleading it would be an issue triable to the jury. No effort was made to present any such issue to the jury. Ray says he sought to elicit proof of such damages from Whitman, superintendent of State Farm. The record does not show any questions asked of Whitman directed to such matters, and no offer of proof of such damages, nor offer to prove that Whitman knew anything about such matters.
 
 
 [15]
 Thus Travelers' brief says of State Farm and its stipulation in connection with the judgment against Risse: "Immediately upon so stipulating, State Farm had a duty as the primary carrier to defend and indemnify Bruce Allen Ray" adding that the conduct of State Farm was such that it was "liable for the entire judgment against the insured even if it exceeds the policy limits."
 
 
 [16]
 As we note hereafter, a strong case can be made to the effect that State Farm in promptly determining it would not defend Ray may have waived a tender of defense on Ray's part, and hence, when it stipulated Ray was driving with the owner's permission, may have simultaneously admitted its coverage of Ray. State Farm's overly broad interpretation of Comunale, just quoted, would suggest that State Farm should then be "liable for the entire judgment."
 
 
 [17]
 The word "insured" is italicized. This suggests that the court was referring to one actually insured, i. e. covered by the policy
 
 
 [18]
 Another point in that case, not involved here, namely the right of one of several insurers to claim contribution from the others to the expense of defense, was disapproved in Continental Casualty Co. v. Zurich Insurance Co., 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455